ELIAS N. MILLER, administrator &c.,

*v.*

MORGAN G. COLT and others.

A legatee's share was limited over only in the event of his death without lawful issue before the distribution of the estate. Before that time he was found to be an habitual drunkard, and one of the executors appointed his guardian. Before his death, distribution of the estate could have been made, and was, in fact, made to all but him.—*Held*,

(1) That the mere non-payment or delivery of such legatee's share to his guardian would not prevent its vesting.

(2) That such legatee was capable at times of managing his own affairs, and yet had not, after the partial distribution, demanded his share, does not affect his right or that of his next of kin.

(3) That the executors (of whom he was one) did not convert the testator's investments of his share into money (admitting that they ought to have done so), does not affect the vesting since. The inquisition deprived him of the power to act, and his guardian's inaction was, under the circumstances, equivalent to a waiver.

(4) That the testator's exclusion of certain of his children or their heirs from participating in his estate on a contingency happening before distribution, indicates no intention to exclude them after distribution.

Bill for relief. On final hearing on pleadings and proofs.

*Mr. R. Wayne Parker* and *Mr. Cortlandt Parker*, for complainant.

*Mr. B. Williamson, Mr. J. D. Bedle* and *Mr. Ashbel Green*, for defendants.

THE CHANCELLOR.

The complainant, as administrator of the estate of Thomas O. Colt, deceased, late of the city of Paterson, files his bill for an account of the status and amount of the estate of the late Roswell Lyman Colt, deceased, and the share of the complainant's intestate, Thomas O. Colt, one of the sons of Roswell Lyman Colt, therein; and for an account, at the hands of Morgan G. Colt, surviving executor of Roswell Lyman Colt, deceased, and late guardian of Thomas O. Colt, under proceedings under the "Act relative to habitual drunkards," of all the estate, property and effects of Thomas O. Colt at the time of his death, including his share of the estate of his father, and all income, rents, profits and accumulation thereof, and for the payment and transfer thereof to him, as administrator of Thomas O. Colt. The bill is filed against Morgan G. Colt individually, and as surviving executor of and trustee under the will of Roswell Lyman Colt, deceased, and as guardian of Thomas O. Colt, and against De Grasse B. Fowler, and Julia C. his wife, one of the daughters of Roswell Lyman Colt, deceased.

Miller *v.* Colt.

Roswell Lyman Colt died on or about the 22d of November, 1856, leaving a last will and testament, dated October 12th, 1852, and a codicil thereto, dated September 25th, 1855, which were duly executed and admitted to probate on the 4th of December, 1856. By the first section of the will he appointed Morgan G. Colt, Thomas O. Colt, Aaron S. Pennington and William Pennington, executors thereof, giving and devising to them, and to a majority of them for the time being, and to the survivors or survivor of them, and the heirs, executors and administrators of the survivor, all such estates, powers and authorities in and over all his estate, real, personal or mixed, in possession or expectancy, as might be necessary to enable them to carry into perfect effect all the devises and bequests of his will, and in trust for that purpose; and also to sell, convey and dispose of all his estate, of every kind whatsoever, then acquired or thereafter to be acquired, as they might think best for the interest of his estate, and to give receipts for the purchase-money, excepting only from the power to sell and convey the personal property in the dwelling-house and on the premises which he then occupied, which excepted property he gave to the three of his children who were then living with him, viz., Morgan G. Colt, Thomas O. Colt and Julia C. Colt, to be divided among them as they might agree; but no valuation was to be made of it. He also gave to his executors full power and authority to demand and receive and compound for all debts due to him, and to collect all rents, issues and profits, revenue, dividends and income that might accrue to his estate or be receivable from or on account of every or any part of his estate; which money, so received, as well as all other moneys, was to be managed, invested and applied for the best interest of his estate, until distribution as in the will directed. By the second section he appointed guardians of the person and estate of his daughter Julia. By the third he made provision in regard to charities. By the fourth he provided for the business of the settlement of his estate, fixing compensation to his execu-

tors, &c., &c.   By the fifth he directed his executors, or the survivors or survivor of them, or the executors and administrators of the survivor, after having first complied with all the previous provisions of the will, to divide forthwith all the rest and residue of his estate, of every kind whatsoever, into four equal parts or shares, and—stating as one of his reasons (of which he said he had many) for confining the division of the residue to three of his children and the children of a deceased son, that, by an arrangement between him and his wife (who had relinquished all claim to his estate), he was to provide for them out of his estate, and she was to make provision for their other children, five in number, out of her separate estate—he declared it to be his will and fixed determination that neither his wife nor any of the five children for whom she was to provide, or the child or children of either or any of them, should have any share or portion of his estate, except as he might thereafter provide.

And he positively ordered and directed that his executors, having made the division of all the rest and residue of his estate as thereinbefore directed, and having estimated in and added to it for that purpose all charges (without interest thereon) then made or which should thereafter be made to the debit of his deceased son Roswell's estate, or the testator's children, Morgan, Thomas and Julia, on his books at the time of his death (but the charge in each case was to be deducted from the corresponding share when separated), should appropriate one of the shares, or a fourth of the residue so made up, after deducting therefrom the amount with which his deceased son Roswell was charged on his books, to be held for the benefit of his grandchildren Roswell Lyman Colt, junior, Maria Theresa Colt and Margaret O. Colt; the property to be held by his executors and the survivor of them, and the executor or administrator of the survivor, in trust, first, for the purpose of properly and handsomely supporting and giving a good education to each of those grandchildren, and, as the grandchildren should respectively arrive at majority, to pay each of them his or

her equal share of the income which the fund held in trust
for them might produce, and continue such payment for the
natural lives of the grandchildren, and at their respective
deaths to pay over to their lawful issue, if of legal age, and,
if not, to their guardians, the parents' share of the principal;
and if any of the grandchildren should die without lawful
issue, then the income, and finally the principal, of the share
of such decedent should go to the others of the grandchil-
dren and their lawful issue, on the same trusts and condi-
tions as those on which the whole share was given.   But if
all of those grandchildren should die without lawful issue,
he then ordered and directed his trustees and the survivors
&c. of them to dispose of that share of his property as he
had " directed his property to be disposed of in his will, of
such of his children dying without lawful issue before his
estate should have been distributed."

And he further directed that his executors should " pay
and hand over " another fourth part of his estate to his son
Morgan G. Colt, after deducting the sum charged to him on
the testator's books at the time of the testator's death; and
he provided that if Morgan G. Colt " should die before dis-
tribution, leaving lawful issue," the executors were to hold
the share for such issue, according to the laws of this state
distributing the estates of persons dying intestate.   And he
added:   " But dying without such lawful issue, then said
share to be disposed of to and among my three other chil-
dren, subject to the conditions and limitations provided for
as to the other shares of my son Roswell L. Colt, junior
and Julia C. Colt."

The testator then proceeded as follows:

" One other of said shares I order and direct forthwith in like man-
ner to be paid over to Thomas O. Colt, first deducting from said share
the sum he shall stand charged with on my books at the time of my
death.   But if he dies before distribution, leaving lawful issue, then
my said executors are to hold such share in trust for such lawful issue,
to be distributed to and among them according to the laws of New
Jersey for distributing intestate estates; and for want of such issue, to

and among my other children, as I have ordered my other property distributed, and subject to the conditions and limitations provided for as to the shares of my son Roswell L. Colt, jun. and Julia C. Colt; and the remaining fourth of my estate to hold in trust for the sole and separate use and benefit of my said daughter Julia C. Colt, for the term of her natural life, in the manner and under the qualifications, and subject to the exceptions and provision hereinafter stated in regard to this share. That is to say, my said executors and trustees shall, during the minority of my said daughter, pay for her maintenance and education a very liberal sum out of the income of said share; the balance of said income to be invested until my daughter shall attain the age of twenty-one years, or be married, whichever shall first happen; and from and after attaining the age of twenty-one, or being married, the said executors or trustees shall pay over to my said daughter, for her sole and separate use, married or unmarried, the entire net income of said share, until she attains the age of thirty, which will happen on the 22d day of May, in the year of our Lord eighteen hundred and sixty-five, and upon her arriving at the said age of thirty, then I direct my said executors and trustees to pay and hand over to her, if she wishes it, for her own sole and separate use, one fourth part of the estate held in trust for her, to be disposed of by her, as she may think fit, whether she be sole or married, and the income of the remainder of said share to be continued to be paid and applied for her sole use, as before ordered, during the residue of her natural life; and I do hereby give my said executors and trustees full power to invest and change the investments from time to time, as they shall think most for the interest of my said daughter. If my said daughter shall die leaving lawful issue, I direct her said share of my estate to be transferred to and among her lawful issue in the manner my said daughter by her last will and testament may direct, and for want of such direction, then according to the laws of New Jersey for the distribution of intestate's estates. But if she shall die leaving no lawful issue, then said share, or so much as has not been paid to her, shall go and be distributed in the same manner as I have directed the three other shares of my property to be appropriated; and my meaning in this last clause, which I have annexed to each of the four shares of my estate, is this—that the share of any one of my children shall, upon the death of said child, leaving no lawful issue, go over to the three others; that is to say, that the said share of Roswell L. Colt, jr., deceased, if his children shall all die leaving no lawful issue at their respective deaths; and so as to so much of the shares of my sons Morgan G. Colt and Thomas O. Colt, if they or either of them die leaving no lawful issue before such distribution; and in like manner if my daughter shall die leaving no lawful issue, the share or shares, or residue of

shares, shall go to my three surviving heirs, being the others of said heirs as may be dead leaving lawful issue then living when said shares go over, in equal shares; the lawful issue of any such deceased child to take *per stirpes*, or such share together as the parent would have been entitled to if then living, and no more. And it is my will that the share, or part of share, which any or either of my said heirs shall so take, shall go to him, her or them, for the same interest or estate, and under the same limitations or conditions, and subject to the same powers in all respects as I have provided for in their original shares respectively, and no other."

The testator then provided that if his before-mentioned three grandchildren should die leaving no lawful issue, and his sons Morgan and Thomas and daughter Julia should die leaving no lawful issue surviving him, the rest and residue of his estate " not already divided " should be divided into ten shares, and he disposed of all them, giving one to each of his five children, who, as before mentioned, were to be provided for by their mother out of her separate estate.

By the codicil he revoked the provision made for the children of his deceased son Roswell, and directed his executors to charge off to the account of profit and loss the charge on his books against their father, and discharge the estate of the latter from the payment thereof, and in lieu of the provisions in favor of Roswell's children in the will, he provides as follows:

"I do hereby will and direct that my said executors, the survivors and survivor of them, and the executors and administrators of such survivor, of my said will of 12th October, 1852, shall hold in trust for the benefit of my said grandson Roswell L. Colt, junior, the sum of forty thousand dollars, to be paid to him when he shall arrive at the age of twenty-five years, with the increase thereon from accumulation. But if my said grandson Roswell L. Colt, junior shall die before he shall arrive at the age of twenty-five years, then I direct that if he shall leave lawful issue, that the said sum of forty thousand dollars, with the accumulation thereon, be paid to the legal guardians of such lawful issue, for the use of such issue, to be divided among them according to the laws of New Jersey for the distribution of the estates of those dying intestate. But if my said grandson Roswell L. Colt, junior shall die before he shall arrive at the age of twenty-five years, without

Miller *v.* Colt.

issue, then I direct the sum of forty thousand dollars, with the accumulation thereon, to be added to my general estate and to be considered as part and parcel thereof, and to be divided into three shares as hereinafter provided for. It is my wish and desire, however, and so I order and direct, that after my said grandson Roswell L. Colt, junior shall arrive at the age of twenty-one years, the whole yearly income of said forty thousand dollars be paid to him until he shall arrive at the age of twenty-five years, if he shall live so long, and in the meantime that he be well educated and properly supported out of the income he derives from his father's estate and from the interest of this conditional bequest.

" In the next place, I will and direct that the said executors of my said will, the survivors and survivor of them, and his executor or administrator, shall hold in trust for the benefit of my granddaughter Maria Theresa Colt the sum of twenty thousand dollars, to be paid to her when she shall arrive at the age of twenty-five years, with the increase thereon from accumulation.

" But if my said granddaughter Maria Theresa Colt shall die before she shall arrive at the age of twenty-five years, then I direct that, if she shall leave lawful issue, the said sum of twenty thousand dollars, with the accumulation thereon, be paid to the legal guardians of said lawful issue, for the use of such issue, to be divided among them according to the laws of New Jersey for the distribution of the estates of those dying intestate. But if my said granddaughter Maria Theresa Colt shall die before she shall arrive at the age of twenty-five years, without issue, then I direct the said sum of twenty thousand dollars, with the accumulation thereon, to be added to my general estate, and to be considered as part and parcel thereof, and to be divided into three shares, as hereinafter provided for.

" It is my wish and desire, however, and I so order and direct, that after my said granddaughter Maria Theresa Colt shall arrive at the age of eighteen years, or shall marry, the whole yearly income on the said sum of twenty thousand dollars be paid to her, for her separate use and control, married or unmarried, until she shall arrive at the age of twenty-five years, if she shall live so long, and in the meantime that she be well educated and supported out of the income she derives from her father's estate, and from such part of the income from this conditional bequest as may be necessary.

" In the next place I will and direct my aforesaid executors, the survivors and survivor of them, and the executors or administrators of such survivors, to hold in like manner, for the conditional benefit of my granddaughter Margaret Oliver Colt, the like sum of twenty thousand dollars, subject to all and every the limitations, conditions, restrictions and reservations in every respect whatsoever, with remain-

der, in case of need, for benefit of my general estate, as is provided for in the last foregoing conditional bequest in favor of my granddaughter Maria Theresa Colt.

"And my said executors having thus far provided for the bequests and grants under this codicil, and the bequests and grants in my said will of the 12th October, 1852, up to the fifth item, I then order and direct my said executors, instead of dividing the rest and residue of my said estate, real and personal, into four parts as directed by said will, to divide the same into three equal shares or parts, one of which shares or third of my estate to be paid to Morgan Gibbes Colt, under the provisions, limitations and conditions in the fifth clause in my said will mentioned; one other share or third part of my estate to be paid to my son Thomas Oliver Colt, under the provisions, limitations and conditions in the fifth clause in my said will mentioned; and the remaining share or third part of my said estate to be held in trust by my said executors, acting as trustees, for the benefit of my daughter Julia Catharine Colt, under the provisions, limitations and conditions in the fifth clause in my said will mentioned; except as to the said three shares, if any of my said three children shall die, leaving no lawful issue, the share of such child so dying shall go to the others, and not to the children of my son Roswell, my intention and will being to leave the residue of my estate to and among my said three children and their heirs, exclusive of the children of my son Roswell, as I have in this codicil otherwise provided for them."

As before stated, the will and codicil were proved in 1856. It appears that the accounts were stated, and the shares equalized, and the estate was ready for distribution not long after the testator's death.

On the 12th of February, 1857, Julia C. Colt filed her bill in this court to draw the estate here for settlement, management and distribution. The bill prayed an account, and, among other things, that the amounts with which Morgan, Thomas and Julia were respectively charged on the testator's books, might be established, and that the complainant Julia C. Colt might have her residuary share in the estate set off, and her annual income ascertained, and the mode and time of payment fixed.

The executors filed their answer February 26th, 1857, submitting themselves, in all things, to the order and direction of this court. By a decree made in the cause on the

1st of September, 1858, it was ordered, on the advisory opinion and report of a master, that the shares of Morgan, Thomas and Julia be equalized in a mode mentioned in the master's report, and then agreed upon by them and approved by this court, and that thereupon, and after having charged each of them with the sum of $2,463.10, and after payment of debts, legacies, commissions and other liabilities, the estate be divided into three equal parts or shares, one for each of the three children, Morgan, Thomas and Julia, then Mrs. Fowler.

By the master's report, which was dated June 22d, 1858, and was confirmed by the decree last mentioned, the account of the executors with Morgan L. Colt, "one of the heirs of said deceased," is stated, and by it it appears that the executors charge themselves with a balance of the estate of $588,406.98, and subtracting therefrom the amount of the legacies to the children of Roswell L. Colt Junior, $80,000, state that $169,458.99⅛, one-third of the difference, belonged (subject to commissions) to Morgan O. Colt, and that the same amount, subject also to commissions, was due to Thomas and Julia respectively; each of the thirds being subject, under the will, to a charge for an annuity and a life insurance premium. The equalization was made soon afterwards.

By another decree in that cause, dated September 15th, 1868, it was recited that all the debts and charges against the estate had been paid except the legacies to the children of Roswell L. Colt, junior, which it was proposed to secure, and it was ordered that Morgan G. Colt's share of the estate of the testator be transferred to him. The estate then, according to that decree, consisted of 2,571 shares of the capital stock of the Society for Establishing Useful Manufactures, and a house and lot in Paterson. By another decree in the cause, dated October 21st, 1868, it was recited that all the liabilities of the executors, and all the debts of the testator, and all charges against his estate had been paid up to July 1st, 1868, except the legacy of $40,000 given

to Roswell L. Colt, junior, and the accumulation thereon, and the legacy of $20,000 given to Maria Theresa (then Mrs. Salisbury) and ·the accumulation thereon (the other daughter of Roswell L. Colt, son of the testator, died unmarried, September 27th, 1868), and that it appeared by the master's report that the executors had transferred to the trustees of the children of Roswell L. Colt, junior, deceased, bonds and mortgages to an amount sufficient to secure the payment of those legacies and the accumulation thereon when due, for the purpose of securing the payment thereof,' and that the executors owed nothing on account of the estate except the two legacies to the children of Roswell L. Colt, junior, deceased, which, being duly secured, might be ·properly treated as paid by the executors, and that the executors then held the estate of the testator ready for distribution according to the will, and that the estate consisted of 2,571 shares of the capital stock of the Society for Establishing Useful Manufactures, and of a dwelling-house and lot in Paterson, and a contingent interest in the two legacies to Roswell L. Colt, junior and Maria Theresa Salisbury, children of Roswell L. Colt, deceased, and in the accumulation thereon under the will; and that Mrs. Fowler was entitled, under the will, to the full one-fourth part of her share of the testator's estate; possession to be handed over to her by the executors on her arriving at the age of thirty years, which she had already attained, and it was thereupon ordered that that part of her share be set off and transferred to her accordingly.

In 1863, Thomas O. Colt was duly found, on inquisition under the "Act relative to habitual drunkards" (*Rev. p. 324*), to be an habitual drunkard, and Morgan G. Colt was duly appointed his guardian. Those proceedings were never set aside. He died in July, 1869, intestate, and administration of his estate was granted to the complainant in 1870.

It appears, then, that in the fall of 1868, and in the lifetime of Thomas O. Colt, the debts of the estate had all been paid, and all legacies either paid or so secured as to be

regarded for the purposes of distribution of the estate as having been paid. Morgan G. Colt's share was ordered to be paid to him at that time. Three-fourths of Mrs. Fowler's share were held in trust for her, and the other fourth was then paid to her. There was no reason why the share of Thomas O. Colt should not have been handed over to his guardian. Certain it is that distribution of the estate was practically made in his life-time. His share was ascertained and was in the hands of the executors, one of whom was his guardian, and he himself was one, also. The complainant claims that he is entitled to so much of that share as is personal estate, and the defendants resist the claim on the ground that by the will the share of Thomas O. Colt was limited over to his brother Morgan and sister Julia, in the event of his death without lawful issue.

The will provided for a division of the estate immediately after the directions of the first four sections were complied with. The language is: "My executors or the survivors or survivor of them, after having first complied with all the previous provisions of this my last will and testament, shall forthwith divide all the rest and residue, of every kind whatsoever, &c." It orders and directs that one of the four shares (reduced by the codicil to three) shall forthwith be paid over to Thomas, first deducting from it the sum with which he should stand charged on the testator's books, but that if he should die before distribution, leaving lawful issue, then the executors were to hold the share in trust for such issue, to be divided among them according to the laws of this state for the distribution of the estates of persons who die intestate; and it adds, " for want of such issue," to and among the testator's other children, as he had ordered his other property distributed, and subject to the conditions and limitations provided for as to the share (according to the will) of his daughter Julia and the share of the children of his son Roswell L. Colt, junior.

The defendants insist that the limitation over, on death without issue, is not confined by the will or codicil to death

before distribution. But it is quite clear that the testator in that limitation referred to death before and not to death after distribution. In the first place, such is obviously the natural import of the language. Both limitations manifestly and naturally refer to the same point of time. And, again, there is no other evidence of any intention on the part of the testator to limit the share over in case of death without lawful issue after distribution. The share is given to the legatee himself. It is to be "paid over" to him. The language of the will in regard to Morgan's share is, "pay and hand over." It is undeniable that the legacy vested on the death of the testator. The language by which it is insisted the limitation over in case of death without lawful issue after distribution is created, is not to my mind evidence of any intention to impose such limitation.

In *Herbert* v. *Tuthill, Sax. 141*, the testator ordered that all the rest of his estate, real and personal, be sold by his executors and turned into money as soon after his decease as conveniently might be, and distributed among his children in the following proportions, viz., two shares to each of his sons, and one share to each of his daughters; and provided that none of the legacies should lapse by the death of any of his children, but that in case of such death the share of the deceased child should go to his or her issue; and if such deceased child should leave no issue, then his or her share should go to and among the testator's surviving children, in the like proportion. It was held that the language did not indicate an intention to limit the legacies over on the legatee's death without issue, after the death of the testator.

It is urged by the defendants' counsel that the testator clearly intended to exclude the five children for whom his wife was to provide, from participation in his estate, and it is insisted that that is a strong argument in favor of the construction for which they contend; and in this connection they direct attention to the language of the testator in both

will and codicil.   The expression in the will to which they refer is that which declares it to be the testator's will and fixed determination that none of those children or any of their children should have any portion or share of his estate except as thereinafter provided in the will.   The expression in the codicil is that if any of his three children, Morgan, Thomas or Julia, should die, leaving no lawful issue, the share of such child so dying should go to the others, and not to the children of his son Roswell, his intention and will being to leave the residue of his estate to and among his three children and their heirs, exclusive of the children of his son Roswell, as he had in the codicil otherwise provided for them.

In the first place, it is to be borne in mind that the testator does not seem to have been desirous of excluding the five children for whom his wife was to provide from participation in his estate absolutely, and at all events, as conclusively appears by the gift of a contingent legacy to each of them in the will; his exclusion of them seems to have been due to the fact that they were to be provided for by their mother out of her separate estate, and, therefore, had no claim upon him for participation in his estate.   There is no evidence of any intention or disposition on his part to exclude them from any share of his estate, if derived by them through gift from their brothers or sister, or by kinship or heirship. The provision in the codicil was intended merely to exclude the children of Roswell L. Colt, junior, from the benefits of the limitation over made in the will in case of the death of either of those to whom shares of the residue were given by the will.   By the will the residue was divided into equal fourth parts, one of which was to go to the children of Roswell L. Colt, junior, and they, under the will, would have been entitled to a part of the share of either of the other residuary legatees who should die before distribution without leaving lawful issue, and whom they might survive. Inasmuch as, by the codicil, the provision made for them by the will was revoked and other provision substituted, he

intended to confine them to the provision made for them in the codicil. But there is no evidence that he intended to debar them from receiving any part of his estate, from or under either of his residuary legatees, Morgan, Thomas or Julia, by gift, descent, devise or legal distribution. The plan of the will and codicil, as to the residue, was to give it to Morgan, Thomas and Julia, with substitution of their lawful issue in their places, if they should die before distribution leaving such issue, but with limitation over to the survivors or survivor in case of their death without lawful issue before distribution. On distribution, however, the shares were to belong absolutely to those to whom they were given, and the testator did not attempt or intend to control them further.

The testator himself declares his meaning clearly. In the fifth section of the will, after using the expression "in the same manner as I have directed the three other shares of my property to be appropriated," he adds: "And my meaning in this last clause, which I have annexed to each of the four shares of my estate, is this—that the share of any one of my children shall, upon the death of said child leaving no lawful issue, go over to the three others; that is to say, that the said share of Roswell L. Colt, junior, deceased, if his children shall all die leaving no lawful issue at their respective deaths; and so as to so much of the shares of my sons Morgan G. Colt and Thomas O. Colt, if they or either of them die leaving no lawful issue before such distribution; and in like manner if my daughter shall die leaving no lawful issue, the share or shares or residue of shares shall go to my three surviving heirs, &c." Here he distinctly and explicitly states that the limitation over in the case of Morgan and Thomas, is to be in case of death without lawful issue before distribution. In this connection it may be remarked that the testator in the will not only directs that the division be made forthwith, but that payment also be made forthwith, and then provides for limitation over, not

Miller *v.* Colt.

in case of death without lawful issue before payment, but before distribution.

The defendants insist that, if the view which I have taken of the limitation is correct, still Morgan and Julia are entitled to so much of the share of Thomas as at his death remained in the hands of the surviving executors (they were Aaron S. Pennington and Morgan G. Colt), because it was in fact undistributed. Reference in this connection is made by them to the finding of the inquisition in the proceedings before mentioned, under the act " relative to habitual drunkards," that Thomas O. Colt then had no property except what he was entitled to under the will of his father; that he had no immediate title to his share of his father's estate, because it was in the hands of the executors for distribution; that distribution would probably not be made for many years (the inquisition was taken in 1863), and that if he should die leaving issue before distribution, the issue was to have the property, but if he should die without issue, the share would go to other parties. That inquisition is, of course, of no importance on the question of construction. It may be supposed to be of weight as establishing the fact that there had at that time been no distribution. But it is of no value on that point. As before stated, as early as 1868, five years after the inquisition and about a year before the death of Thomas O. Colt, the share of Morgan G. Colt was ordered to be paid to him, and one-fourth of Mrs. Fowler's share was ordered to be paid to her, and the rest of her share was duly held in trust for her, and the estate had been settled. Thus distribution had been made. The executors, indeed, held the share of Thomas, but, as before stated, he was one of them and his guardian was another.

Pains have been taken on the part of the defendants to prove that, though Thomas O. Colt was an habitual drunkard up to the time of his death, yet for about two-thirds of the time he was entirely competent to transact business, and from this evidence the deduction is made that he had the capacity to manage his property even after the inquisition,

and that he intended that his share should remain undistributed. But the obvious suggestion presents itself that if such intention existed, it could not alter the fact that distribution was in fact made in 1868 by the separation of the other shares from his. The fact that, though he had business capacity to manage his property, he did not change its custody, but permitted it to remain in the hands of the executors, would in nowise affect his claim to the ownership of it absolutely and in severalty. As before stated, the will does not provide for any limitation over in case of death without lawful issue before payment, but only in case of death without lawful issue before distribution. Manifestly the fact that he left the share in the hands of the executors could not affect the claim of his next of kin or heirs at law to the property of which it consisted.

Again, it is urged in behalf of the defendants, that the testator, by the term " distribution," meant not merely division, but payment also, and that not only had the executors power, but it was their duty, to convert the property in which the share was invested and pay it over, and if it was not converted it could not be said to be distributed. The testator, as before remarked, in the bequest of one of the shares, uses the term "hand over" as well as "pay," and in another the term used is "appropriate." It by no means appears that he did not contemplate the actual division of part, at least, of the estate in the investments in which he would leave it. Indeed, it seems very probable that he contemplated the retention of those investments by the residuary legatees; for the estate consisted almost entirely of the stock of the Society for Establishing Useful Manufactures, all of which, with perhaps a trifling exception, was owned by him, and was very valuable property. He nowhere directs conversion. If it was the duty of the executors to convert, the complainant's rights in this matter can not be affected by the neglect of the executors to do their duty. And, further, the fact that the share was permitted to remain in the hands of the executors without conversion after distri-

Miller *v.* Colt.

bution had in fact been made, is evidence of an intention not to convert it but to accept and retain it in the securities and property in which it was invested.

Thomas O. Colt, from the time when the inquisition was found under the act relative to habitual drunkards, until his death, was divested of all power and control over and legal estate in his property, real, personal or in action, and the power and control over and legal estate in that property were vested in his guardian in trust for him, and no contract made by him would have bound his person or estate. (*Rev. p. 325 § 4.*) He therefore had no legal capacity to exercise any discretion or take any action in the matter under consideration from the time of the finding of the inquisition, but the power and control of his estate was vested in his guardian, Morgan G. Colt. The latter must be deemed, as such guardian, to have waived conversion. Indeed, the answer states that in 1868 the prospect was that the stock of the society, which had increased largely in value up to that time, would increase still further, and that that prospect continued up to the death of Thomas O. Colt; and that at the latter period, and just before that time, his interest in the estate of his father, according to all appearances and the judgment of the best business men, was in as safe a condition as it could be, and it would have been exceedingly unwise to have disposed of the stock.

Manifestly the rights of the complainant do not in anywise depend on the question whether the share was converted or not. *Williams on Ex'rs 1228; Hutchin* v. *Mannington, 1 Ves. jr. 366; Post* v. *Herbert's Ex'r, 12 C. E. Gr. 540.* It would be enough that the legacy vested on the death of the testator, was not defeasible by the death of Thomas O. Colt without lawful issue after distribution, and that he did not die till after distribution might have been made. The complainant is entitled to have an account as prayed.