OSCAR KEEN, trustee, &c.,

*v.*

A. GIFFORD PLUME et al.

[Submitted July 1st, 1912. Decided July 11th, 1912.]

1. By the residuary clause of her will the testatrix after giving five-sixteenths of the residue to her son, Archer Gifford Plume, and five-sixteenths thereof to his daughter, Mary Josephine Lockwood, gave the remaining six-sixteenths thereof to trustees upon certain trusts therein declared, and then divided this trust fund into three parts, and disposed of two-thirds of said remaining six-sixteenths so given to trustees as aforesaid in manner following: "And I do further order and direct that upon my said grandson John I. Plume attaining the age of twenty-one years the said trustees or the survivor of them shall pay to him out of the remaining two-thirds of said equal undivided six-sixteenths parts of said residue of my estate so by them held in trust the sum of $4,000, but if my, said grandson shall not live to that age, then to pay the whole income arising from said two-thirds of said equal undivided six-sixteenths parts of said residue of my estate to my said son Samuel W., and upon his death the said two-thirds, or if the same shall have been sold, the proceeds thereof, to convey to or pay to my three children Mary Josephine Lockwood, Sarah Virginia and Archer Virginia Plume, the same to be held or equally divided between them share and share alike."—*Held,* that the foregoing quoted clause created a remainder in testatrix's said three children, Mary Josephine Lockwood, Sarah Virginia Tugman and Archer Gifford Plume, therein named, which vested upon the death of the testatrix, and that the fund in question be divided into three parts, giving to Archer Gifford Plume, the representatives of Mary Josephine Lockwood, and the representative of Sarah Virginia Tugman, each one-third.

2. Vested and contingent remainders defined and distinguished.

3. Where the real estate of a testatrix has been in fact turned into personalty under a power of sale contained in the will, the result as far as the distribution of the estate is concerned, is the same as if the will contained a direction to convert.

4. A power of sale as distinguished from a trust for sale does not operate as a conversion of property. The direction to sell must be imperative in order to operate as a conversion, but if it be exercised the property will be converted according to law unless there be a trust declared of the proceeds sufficient to reconvert it.

5. It is a physical change of land to money, effected by a valid testamentary power to perform an act evidently in the contemplation of the testatrix, which establishes the rule upon the foundation of reason. The estate will therefore devolve under the provisions of the will as personalty.

On final hearing on bill, answer, replication and proofs.

*Messrs. Pitney, Hardin & Skinner,* for the complainant.

*Mr. J. H. Thayer Martin,* for the defendant John I. Plume.

*Mr. J. Edward Ashmead,* for Harry D. Lockwood and others.

*Mr. Conover English,* for A. Gifford Plume.

*Messrs. Young & Bigelow,* for Henry Young, Jr., administrator, and Edward C. Plume.

HOWELL, V. C.

The controversy in this cause involves the construction of the will of Susan Plume, who died in 1864. The last life tenant died in 1909, and the fund in the hands of the complainant, as trustee, are now ready for distribution. There are several claimants for it, and the trustee seeks the aid of the court in the premises.

The difficulty arises under the seventeenth paragraph of the will which disposed of the residue of the estate. By that paragraph the testatrix gave five-sixteenths of the residue to her son Archer Gifford Plume and five-sixteenths thereof to his daughter Mary Josephine Lockwood; the remaining six-sixteenths she gave to trustees upon certain trusts therein declared. She then divided this trust fund into three parts. One part (one-third) thereof has been disposed of, so that we have only to deal with two-thirds of the six-sixteenths or one-fourth of the residue of her estate. The portion of the will which is in dispute reads as follows:

"And I do further order and direct that upon my said grandson John I. Plume attaining the age of twenty-one years the said Isaac Van Wagenen and Charles L. C. Gifford (the trustees) or the survivor of them, shall pay to him out of the remaining two-thirds of said equal undivided six-sixteenths parts of said residue of my estate so by them held in trust the sum of $4,000, but if my said grandson shall not live to that age, then to pay the whole income arising from said two-thirds of said equal undivided six-sixteenths parts of said residue of my estate to my said

son Samuel W., and upon his death the said two-thirds, or if the same shall have been sold, the proceeds thereof, to convey to or pay to my three children Mary Josephine Lockwood, Sarah Virginia and Archer Gifford Plume, the same to be held or equally divided between them share and share alike."

Archer Gifford Plume, the son, and John I. Plume, the grandson of the testatrix, are still living: Sarah Virginia Tugman died in 1866 intestate and without issue. Samuel W. Plume, the son of the testatrix, died in 1909.

The claimants to the fund are as follows: Archer Gifford Plume claims the whole fund upon the ground that the clause of the will above quoted created a contingent remainder, the contingency being that only the survivor of the three children of the testatrix succeeds to the fund. John I. Plume claims the whole fund on the ground of an implied gift. John I. Plume, as personal representative of his father, Samuel W. Plume, claims the entire fund upon the ground of an implied gift. The personal representative of John V. Plume claims that the testatrix died intestate as to the fund in question and prays that he may be included in the distribution. Edward C. Plume, the son of the said John V. Plume, makes a similar claim. The representatives of the estates of Sarah Virginia Tugman and Mary Josephine Lockwood claim that the said clause created a remainder which vested upon the death of the testatrix, and that the fund should be divided into three parts, giving to Archer Gifford Plume, the representatives of Mary Josephine Lockwood and the representative of Sarah Virginia Tugman each one-third. If the above-quoted clause created a remainder in Archer Gifford Plume, Mary Josephine Lockwood and Sarah Virginia Tugman, which vested upon the death of the testatrix, then their contention is correct and the fund will be disposed of accordingly, and it will be unnecessary to examine into the claims of any of the other defendants.

In my opinion, the testatrix created a vested remainder, the vesting of which happened upon her death. As a preliminary matter it may be stated that in doubtful cases every intendment of the law is in favor of the vesting of estates, for the reason that it must be presumed that a person who goes through the for-

mality of making a will intends to dispose of his whole estate unless the contrary clearly appears. This canon of construction is so well known as to need no citation of authorities, but we are not compelled to appeal to it in the case at bar, for the reason that there can be no doubt upon the words of the will, but that the testatrix did create the estate above indicated.

Chancellor Kent says: "An estate is vested when there is an immediate right of present enjoyment or a present fixed right of future enjoyment. It gives a legal or equitable seisin. The definition of a vested remainder in the New York revised statutes appears to be accurately and fully expressed. It is 'when there is a person in being who would have an immediate right to the possession of the lands, upon the ceasing of the intermediate or precedent, estate.'" *4 Com. 202.*

Mr. Washburne quotes the foregoing view of Chancellor Kent with approval and adds: "The present capacity of taking effect in possession, if the possession were now to become vacant, and not the certainty that the possession will become vacant before the estate limited in remainder determines, universally distinguishes a vested remainder from one that is contingent. By capacity, as thus applied, is not meant simply that there is a person *in esse* interested in the estate, who has a natural capacity to take and hold the estate, but that there is further no intervening circumstance, in the nature of a precedent condition, which has to happen before such person can take. As for instance, if the limitation be to A for life, the remainder to B, B has a capacity to take this at any moment when A may die." *2 Washb. Real Prop. 504.* These views are universal at common law and have been followed and adopted in this state in a long line of cases, to only a few of which reference will be made.

In *Greene* v. *Howell, 30 N. J. Law (1 Vr.) 326,* Mr. Justice Vredenburg stated the rule as follows: "When the absolute property in a fund is bequeathed in fractional interests in succession at periods which must arrive, the interest of the first and subsequent takers will vest together." The point was reviewed in the court of errors and appeals in the case of *Howell* v. *Greene, 31 N. J. Law (2 Vr.) 570,* in an opinion by Chancellor Green, from which this extract is made: "It is a well-settled

34

rule of construction that a gift of a legacy 'at' or 'when' or 'after' a given event occurs vests only upon the happening of the event * * * where the time is annexed, not to the payment merely, but to the gift itself, the legacy does not vest until the period arrives. *Gifford* v. *Thorne, 9 N. J. Eq. (1 Stock.) 705.* On the other hand, it is an equally well-settled rule of construction that where an absolute property in a fund is bequeathed in fractional interests in succession at periods which must arrive, the interests of the first and subsequent takers will vest together."

The use of the phrase "after her decease" in that case corresponds very closely to the use of the phrase "and upon his death" in the present case, which is much relied upon by counsel on behalf of Arthur Gifford Plume as the true criterion of a contingent remainder. An earlier case in our common law reports is *Moore* v. *Rake, 26 N. J. Law (2 Dutch.) 574,* in the opinion in which Mr. Justice Vredenburg says: "An estate is vested when there is an immediate fixed right of present or future enjoyment; the law favors the vesting of remainders and does it at the first opportunity. It is the present capacity of taking effect in possession if the possession were to become vacant that distinguishes a vested from a contingent remainder. It is the uncertainty of the right which renders the remainder contingent, not the uncertainty of the actual enjoyment. A remainder limited upon an estate tail is held to be vested, although it is uncertain if the possession will ever take place."

In this court, following the court of errors and appeals in the two cases above cited, the same rule has been expressed many times and by many equity judges. In *Havens* v. *Seashore Land Co.* Vice-Chancellor Van Fleet quotes the statement of Mr. Justice Vredenburg above cited from *Moore* v. *Rake,* giving it the sanction of his approval, as does Vice-Chancellor Pitney in his opinion in *Kinkead* v. *Ryan, 64 N. J. Eq. (19 Dick.) 454.* The portion of the opinion of the vice-chancellor which dealt with this question was affirmed on appeal, *65 N. J. Eq. (20 Dick.) 736.* In *Voorhees* v. *Singer, 73 N. J. Eq. (3 Buch.) 532,* Vice-Chancellor Leaming defined a vested remainder as follows: "The distinction between a vested and contingent remainder, in a case like the present one, is well defined. The former is one

that is so limited to a person in being and ascertained that it is capable of taking effect in possession or enjoyment on a certain determination of the particular estate without requiring the concurrence of any collateral contingency. The uncertainty as to the remainderman ever enjoying the estate, which is limited to him by way of remainder, will not render such remainder a contingent one, providing he has, by such limitation, a present absolute right to have the estate the instant the prior estate shall determine, but the absence of such absolute right renders the estate a contingent remainder."

I know of no rule of law that is better settled. Applying it to the case in hand, it is very clear that Mr. Plume, Mrs. Lockwood and Mrs. Tugman at the date of the death of the testatrix had a present fixed right of future enjoyment in the said fund, and that if the intermediate particular estate were removed they would have a present fixed right of present enjoyment. This distinguishes the case from cases involving contingent remainders. Here the limitation depends upon death, which is certain, and not upon the happening of any uncertain event. The result is that the one-fourth of the estate of the testatrix now in the hands of the trustee must be divided into three equal parts, one of which must go to Arthur Gifford Plume, another to the personal representatives of Mrs. Lockwood, and the third to the personal representative of Mrs. Tugman. Having thus disposed of the fund, it is unnecessary to consider the claims of the other defendants.

When the memorandum was filed in this case on July 11th, 1912, no mention was made of the question whether there had been an equitable conversion of the estate of Mrs. Plume from realty into personalty. In fact, it seems to have been assumed that the conversion had taken place and that the whole estate now in the hands of the trustee should be regarded as personal property. Since then a very full and complete argument has been had on that point, and I have reached the conclusion that the conversion has taken place and that the whole estate now in the hands of the trustee should be considered and treated as personalty. The only question now is when did the conversion take place.

It might well be asserted that the conversion took place at the death of the testatrix, for the obvious reason that she treated all her property as a single fund to be converted into cash and invested as a single fund for the benefit of certain legatees with a devise over of the proceeds of the sale if the same should have been made, thus raising a case which would compel the court to hold that the conversion took place upon her death for the purposes of the will and for the purposes of distribution; but it is not necessary to decide the case on that point. There is another plain reason why the property must now be held to be personalty.

Treating the power of sale as a mere authorization and power to the trustees to make sale of the premises in their discretion, it must be held that whatever right the devisees took in the estate was subject to the power of sale. *Wurts* v. *Page, 19 N. J. Eq. (4 C. E. Gr.) 365; Condict* v. *Condict, 73 N. J. Eq. (3 Buch.) 301.* There has been no attempt on the part of any of the devisees or legatees to defeat the power of sale by an election to take the land instead of the money, and hence the power of sale continued as a valid power which might be exercised and which was exercised by the trustees in their discretion. The cogent fact is that a conversion has actually been made and the property actually transmuted from realty to personalty without objection; the change took place with regard to each separate parcel of land at the time when the power to sell was exercised and the actual transmutation of the property took place. This rule is found in our own state in *Wurts* v. *Page, supra;* in *Cook* v. *Cook, 20 N. J. Eq. (5 C. E. Gr.) 375; Kouvalinka* v. *Geibel, 40 N. J. Eq. (13 Stew.) 443,* and *McKiernan* v. *McKiernan, 74 Atl. Rep. 289.* The English rule is the same. I quote from Mr. Justice Farwell's work on *Powers* (at *p. 545*) : "A power of sale as distinguished from a trust for sale does not operate as a conversion of property. The direction to sell must be imperative in order to operate as a conversion (*Fletcher* v. *Ashburner, 1 Bro. Ch. C. 497*), but if it be exercised, the property will be converted according to law unless there be a trust declared of the proceeds sufficient to reconvert it. *Walter* v. *Maunde, 19 Ves. 424; DeBeauvoir* v. *DeBeauvoir, 3 H. L. C. 525; Greenway* v. *Greenway, 29 L. J. Ch. 601; 2 De G. F. & J. 128; Sugd. Pow. 856.*"

It is the physical change of land to money, effected by a valid testamentary power to perform an act which was evidently in the contemplation of the testatrix, which establishes the rule upon the foundation of reason. The estate will therefore devolve under the provisions of the will as personalty.