William F. Melosh died on October 17th, 1937, leaving him surviving his widow, Louise W. Melosh, two children by a prior marriage — Elizabeth M. Phair and Rudolph C. Melosh — and one child of his marriage to Louise — Margaret *Page 503 
M. Rusch, the complainant, the wife of Clifford M. Rusch. In his last will and testament duly probated before the surrogate of Hudson County, the decedent named his widow, Louise, and his brother, Henry J. Melosh, executors. Louise died in an accident on July 30th, 1941, leaving her surviving the complainant. In her will, admitted to probate by the surrogate of Hudson County, she named the complainant executrix, and left her entire estate to her, with the exception of $5,000.
Upon the death of Louise, Elizabeth M. Phair, aforesaid, was, in or about September, 1941, appointed substituted administratrixcum testamento annexo of William's estate.
The purpose of this suit is to quiet title to premises 69 Astor Place, Jersey City, New Jersey, and obtain a construction of the first and second clauses of the will of the decedent William, which read as follows:
"First: I give, devise and bequeath my house known as 69 Astor Place, Jersey City, N.J., together with the furniture and household effects therein contained to my wife, Louise W. Melosh, to her, her heirs and assigns forever.
"Second: I give, devise and bequeath an equal undivided one fourth part of the remainder of my estate, whether real, personal or mixed, wheresoever situate and of whatsoever the same may consist, unto my wife, Louise W. Melosh, to her, her heirs and assigns forever.
"These two bequests and devises herein made to my wife are in lieu of her dower, and should she predecease me or die prior to the distribution of my estate, her share so bequeathed and devised shall be part of my residuary estate and disposed of as hereinafter provided."
Complainant took possession of the premises 69 Astor Place upon her mother's death, and leased them to Beatrice Hardy. Shortly afterward, the executors, Henry and Elizabeth, notified the lessee that her occupation of the premises was without right and that they were entitled to the possession thereof.
The defendants in their answers to the bill of complaint allege that the title of Louise to the premises 69 Astor Place was subject to a condition subsequent, i.e., she died before the distribution of William's estate, and consequently her title to the premises was divested, and which, with the bequests and devises mentioned in the second clause of William's will, thereupon became part of his residuary estate. *Page 504 
William at the time of his death resided with his wife Louise at the above address. Louise continued to reside there until her death.
William's gross personal estate amounted to $163,608.45, while his realty was valued at $47,500. He had few debts. Several suits were brought in this court against the estate. One was instituted by the testator's son Rudolph, who claimed that his father was indebted to him for moneys that were due him from the estate of his maternal grandparents, Charles R. and Elizabeth Ecklin, of whose wills, William had been executor. On May 4th, 1939, a final decree in his favor was entered, and he recovered thereby the sum of $27,393.53, which was paid him by the executors on or about March 29th, 1940.
Elizabeth, the daughter, instituted a similar suit. It was dismissed by a final decree entered on May 8th, 1939. She took an appeal to the Court of Errors and Appeals, and the final decree was affirmed by an opinion filed January 25th, 1940.
Two years before the death of William, he gave Louise $25,000 in cash. The other executor, Henry, contested the validity of the gift by bringing suit in this court for its recovery. The suit was dismissed by final decree entered November 6th, 1939. An appeal was taken to the Court of Errors and Appeals, which on April 25th, 1940, affirmed the decree.
All of the creditors of William's estate, with the exception of Rudolph, were fully paid and satisfied prior to May 1st, 1938.
No inventory of William's estate, no transfer inheritance tax report, and no federal estate tax report for the estate were filed until after the decrees were entered. The inventory was filed July 28th, 1941. The transfer inheritance tax report was filed on or about December 3d 1939, and on February 28th, 1940, was paid and satisfied. The federal estate tax return was filed on February 16th, 1940; and was satisfied by two payments, the first dated February 16th, 1940, and the second, April 3d 1940. It is alleged that when the executors filed this return, they failed to ask credit for sufficient counsel *Page 505 
fees. They asked for a refund; and on April 15th, 1941, they stipulated with the Internal Revenue agent in Newark, New Jersey, that the determination of the amount of counsel fees which the executors would be entitled to receive credit for, should await the final accounting by the executors, and would be determined by the allowances made by the Hudson County Orphans Court.
It is contended by the complainant that by April 1st, 1940, the exact amount of the assets of William's estate had been determined; that all creditors of the estate had been fully paid and satisfied; and that the executors were then in a position to have filed their inventory and final accounting. The evidence appears to sustain the contention of the complainant. The executors on April 3d 1940, acting as trustees under the will, made a partial distribution of the estate to the four principal legatees and devisees thereof, by distributing the sum of $5,000 equally among them. They paid a one-quarter share, or $1,250, minus certain deductions, to Louise, Elizabeth, Rudolph and Margaret. A second distribution of $2,400 was made among the three life tenants on November 1st, 1940, and Louise was credited with the sum of $800 against the $100 monthly payments which she had received up to that time.
Nothing transpired in the affairs of the estate between April, 1940, and July, 1941, which would have prevented the preparation and filing of the inventory. Complainant says, and with some assurance, that it could have been prepared and filed as conveniently in 1940 as in 1941. She alleges the same is true of the executors' final accounting. There is force in the assertion. I believe those records could and should have been filed. However, the failure, the neglect, or the procrastinating attitude of the executors can be overcome, or remedied, by the application of the equitable maxim that equity considers that done which ought to have been done.
A review of the executors' activities show that on June 19th, 1940, they filed a bill in this court and claimed that the testator William had acquired certain bonds and mortgages and real property in fictitious names, i.e., David P. *Page 506 
Smythe and Walter L. Hamilton. A hearing thereon was had before Vice-Chancellor Fielder on January 9th, 1941, which was continued to June 5th, 1941. The Vice-Chancellor by final decree dated December 8th, 1941, adjudged that the bonds and mortgages and real property were part of the assets of the estate of William. An appeal was taken by one of the defendants, Blue Mirror, Inc., and the Court of Errors and Appeals on April 23d 1942, affirmed the Vice-Chancellor's decree.
Louise and Henry as executors and trustees opened two bank accounts in the New Jersey Title Guarantee and Trust Company; in one of the accounts they deposited cash corpus, and in the other cash income. On February 14th, 1939, the Title Company failed; there was then on deposit in the corpus account the sum of $7,141.15, and in the income account the sum of $7,214.54. The executors filed a claim with the Federal Deposit Insurance Company for the aforesaid amounts, but that corporation refused to pay more than $5,000 on account of both accounts. The executors then brought suit for the difference in the United States District Court for the District of New Jersey, which suit is still pending.
During the period of Louise's residence at 69 Astor Place, Jersey City, after William's death, she paid the taxes, and the water rents due against the premises, and also made and paid for necessary repairs to the building. During her possession no demand for rent was made by the representatives of William's estate. She exercised the rights of ownership of the title; and her activity was not questioned or challenged. The furniture and household effects in the premises were turned over to her and were used continuously by her until her death.
The last paragraph in clause three of William's will reads as follows:
"Until the said legacy has been paid and the trusts created as herein provided, I direct my executor and executrix to pay to my wife, a sum not to exceed one hundred dollars a month, the payment of which shall be charged first against her one-fourth share of the income of my estate, and if that be insufficient to pay the same, then the balance shall be charged as an advance upon her legacy." *Page 507 
Louise received three monthly payments to January, 1938, when Henry refused to make further payments until the suit questioning the validity of the $25,000 gift had been adjudicated. When it was decided in favor of Louise, the payments of $100 per month were resumed. Prior to her death, Louise received a total of $4,600 from William's executors, i.e., $2,500 on distribution of income, and the balance in monthly payments. One quarter of the net income from William's residuary estate amounted to $3,529.06, leaving Louise overdrawn to the extent of $1,070.94. The latter sum is chargeable against her one-quarter share of William's residuary estate.
The language in the first clause and the first paragraph of the second clause of William's will is clear and unequivocal. The first clause is a specific bequest wherein he devises his home and all its contents to his wife, her heirs and assigns forever.
The first paragraph of the second clause contains William's plan for the distribution of the balance of his estate to his four primary beneficiaries: his wife, Louise, and his three children. He divided the balance of his estate into four shares, and gave one thereof to Louise, her heirs and assigns forever. The second paragraph of the second clause of the will requires clarification. The words therein "should she * * * die prior to the distribution of my estate" are of uncertain meaning.
At the time of William's death the assets of the estate were somewhat unliquid and not easily reduced to cash without loss. The estate has not been in a condition where its assets could be easily divided. Louise was approximately seventy years old and in poor health at the time of William's death, which warrants the inference that the testator did not intend actual survival by her of the physical partition of his estate to be the condition upon which she took her interest in his estate.
It may be observed that under our statutes, legacies are dejure payable, and estates are de jure distributable one year after the testator's death. In re Ferguson, 124 N.J. Eq. 573;3 Atl. Rep. 2d 439; affirmed, 127 N.J. Eq. 14; 11 *Page 508 Atl. Rep. 2d 107; Revision of 1937, 3:26-1. A consideration of all the facts and circumstances surrounding William's estate, inclines me to the belief that the latter period is the time for distribution that William intended and had in mind. Testators are presumed to know the law and to have drawn their wills according to it. I believe that William, the testator, in preparing his will, under the guidance of able counsel, concluded that his estate would be distributed in accordance with law, viz., within the twelve month period. And even though he assumed, and he could have assumed that circumstances which he did not anticipate, might prevent his executors distributing his estate within the twelve month period, such circumstances would have no effect upon his intention, and would not divest his widow of her lawful share of his estate, which she accepted in lieu of dower.
Louise survived William for a period of approximately four years. Within that time the executors and trustees distributed the sum of $8,200 to her and the three life tenants. Under the will three-quarters of the estate was held by Louise and Henry as trustees for the three life beneficiaries. Payment to Louise of a substantial distribution of the estate, was made at least fifteen months before she died; and before her death, as heretofore stated, the debts of the estate had been paid, the three suits in which it was involved had been adjudicated, the inheritance taxes and estate taxes had been determined and paid. In the light of that situation, the complainant's contention that the estate could and should have been distributed appears to be justified.
The devise and bequest to Louise as above observed under clause one of William's will was specific, and the real estate was vested in her immediately upon William's death by force of the will itself. She thereby became entitled to immediate possession of the premises 69 Astor Place, and to the personal effects therein contained, subject, of course, to the payment of debts. While the one-quarter share given to her under the first paragraph of the second clause vested in her immediately upon William's death, she was not entitled to demand that share until the end of one year. Welsh v. Brown, 43 N.J. Law 37; CaldwellNational Bank v. Rickard, 103 N.J. *Page 509 Eq. 516; 143 Atl. Rep. 745; Rowe v. Rowe, 113 N.J. Eq. 344;167 Atl. Rep. 16; Gates v. Plainfield Trust Co., 121 N.J. Eq. 460; 191 Atl. Rep. 304; affirmed, 122 N.J. Eq. 366;194 Atl. Rep. 65. See Trust Company of New Jersey v. Greenwood Cemetery,21 N.J. Mis. R. 169; 32 Atl. Rep. 2d 519.
In construing a will the court's primary purpose is to ascertain the testator's intention and having done so, to give it effect. Coffin v. Watson, 78 N.J. Eq. 307; 79 Atl. Rep. 275;affirmed, 79 N.J. Eq. 643; 83 Atl. Rep. 1118; McDonald v.Clermont, 107 N.J. Eq. 585; 153 Atl. Rep. 601. This rule also applies where the question presented is whether a given estate is vested or contingent. Post v. Herbert's Executors, 27 N.J. Eq. 540; Kates, Trustee, v. Walker, 82 N.J. Law 157;82 Atl. Rep. 301. Testator's intention is to be gathered from the entire will. Peer v. Jenkins, 102 N.J. Eq. 235; 140 Atl. Rep. 413;Brown v. Coxson, 118 N.J. Eq. 114; 177 Atl. Rep. 551; affirmed,119 N.J. Eq. 85; 181 Atl. Rep. 42.
Were the interests of Louise subject to a condition subsequent as alleged by the defendants? As a general proposition the law does not favor conditions subsequent. It has adopted the policy that estates should vest unconditionally at the earliest possible moment. Mr. Justice Gummere in the case of In re Buzby, 94 N.J. Eq. 151; 118 Atl. Rep. 825, stated the rule as follows:
"The policy of the law requires that legacies in all cases, unless clearly inconsistent with the intention of the testator, should be held to be vested rather than contingent. Van Dyke'sAdmr. v. Vanderpool's Admr., 14 N.J. Eq. 198; Neilson v.Bishop, 45 N.J. Eq. 473; Clark v. Morehous, 74 N.J. Eq. 658.
And so, in furtherance of this policy, it is generally held that when the absolute property in a fund is bequeathed in fractional interests in succession at periods which must arrive, the interests of the first and subsequent takers will vest together; and this rule of construction is always applied when it is apparent from the terms of the will that a future gift is postponed to let in some other interest, such as a life estate." *Page 510 
In Camden Safe Deposit and Trust Co. v. Scott, 121 N.J. Eq. 366; 189 Atl. Rep. 653, the Court of Errors and Appeals, through Mr. Justice Perskie, said (at p. 371):
"It is the well settled law that courts will make every intendment in favor of vesting the estate. Clark v. Morehous,74 N.J. Eq. 658, 666; 70 Atl. Rep. 307, 310. * * * In re Buzby,94 N.J. Eq. 151, 153. Full force, however, should be given to the intent of the testator and that intent must be gathered from the will as applied to the testator's situation by the application of known and tried rules of construction. Wills v.Wills, 72 N.J. Eq. 782; affirmed, 73 N.J. Eq. 733; Coffin v.Watson, 78 N.J. Eq. 307; affirmed, 79 N.J. Eq. 643. `In construing a will the predominant idea of the testator's mind, if apparent, is heeded against all doubtful and conflicting provisions which might of themselves defeat it.' Peer v.Jenkins, 102 N.J. Eq. 235, 238."
See, also, Keen v. Plume, 82 N.J. Eq. 526;90 Atl. Rep. 1027; affirmed, 82 N.J. Eq. 645; 90 Atl. Rep. 1027; Parmentier
v. Pennsylvania Company for Insurance, 122 N.J. Eq. 25;192 Atl. Rep. 62; affirmed, 124 N.J. Eq. 272; 1 Atl. Rep. 2d 332.
The complainants take the position that if the second paragraph of the second clause of the will, which has a provision in case of the death of Louise prior to the distribution of the estate, is construed to be a condition, it calls for a strict construction because it tends to defeat Louise's vested estate. In taking that position the complainant stands on solid ground. The earliest case in New Jersey enunciating this doctrine appears to be Den v. The Lawrence Church (Supreme Court, 1845),20 N.J. Law 551, in which Chief-Justice Hornblower said (at p.555):
"It is sufficient to add, that `conditions subsequent are not favored in law, and are construed strictly, because they tend to destroy estates;' * * * Nor will a court of equity lend its aid to divest an estate upon a condition subsequent."
In Board of Education of the Borough of West Paterson v.Brophy, 90 N.J. Eq. 57; 106 Atl. Rep. 32, Vice-Chancellor Lewis said (at p. 62):
"Conditions subsequent are always construed strictly and *Page 511 
will never work a forfeiture unless they are clearly expressed in unequivocal terms or necessarily implied."
In Schouler on Wills, Executors and Administrators (6thed.) 1469 § 1328, the author discusses the construction of conditions as follows:
"Conditions not favored. Conditions have many qualities which make them obnoxious. They are proof against the Statute of Limitations and the Rule against Perpetuities and are usually somewhat uncertain in their nature and effect and for these and other reasons are expressly dreaded by conveyancers. * * * our modern decisions which by construction limit conditions as far as possible and hold that a will should be construed if possible to avoid the creation of an estate subject to a condition, particularly a condition precedent."
See Southard v. Central Railroad Co., 26 N.J. Law 13;Tiffany, The Law of Real Property (3d ed.) 314 § 193; Page onWills (Lifetime ed.) § 1279.
The English courts appear to have considered the question here involved to a greater extent than our New Jersey courts. InHutcheon v. Mannington, 1 Ves. Jun. 366; 30 English Reprints388, the testator's will, which devised his residuary estate to his father, contained the following condition: "`but in case of his death before he may have received the rest and residue of my estate before mentioned' he gave it over to his brothers and sisters before mentioned and their children." The bill was brought by the brothers and sisters of the testator, to whom the residue was given over, claiming it upon the event of the father's death before receiving it.
Lord Chancellor Thurlow held that the foregoing language was too indefinite to be enforced, and held that the father's share vested absolutely on testator's death. He said (at p. 389):
"Suppose any of these legatees had died within a year after the testator, there might then have been some ground for saying, that the testator alluded to the known practice of the court to compute interest upon legacies from a year after the death of the testator. I rather believe, he had some such purpose, as you attribute to him, in his contemplation. There is a faint indication of a purpose, that there shall be some time or other, when these interests shall go over, and that *Page 512 
they shall not vest in the meantime. But has he conceived that intention, and expressed it with such definite certainty, that I can act upon it? I am to compute, what time would be sufficient to enable these parties to receive their legacies. It is all too uncertain. Suppose they lived, and claimed their legacies they must have been computed with interest from a year after the death of the testator, if no other time was appointed. If he had given any time, I agree, that the intention is to prevail, if it can be found out (though a testator cannot make an executor answerable for interest, beyond what the law has done); but he must give me some rule to go by. Suppose he had given a real estate in the manner you specify; it is clear, that it will neither dependupon the caprice of the trustee to sell, for that would becontrary to all common sense, nor upon his dilatoriness; * * * it must be considered as vested from the death of the testator." (Italics mine.)
In Martin v. Martin, 2 L.R. (Eq. Cas.) 404, the testator divided his residuary estate among his surviving nephews and nieces and provided: "And if either or any of my nephews and nieces shall die before me or before they shall have actually received what is to go to them under this will, that, in any and every such case or cases, their share shall be divided, equally, share and share alike, between their children, * * *." The court held that the shares of the nephews and nieces vested absolutely immediately upon the testator's death and said (at p. 409):
"I have felt a great deal of doubt, but only in one respect, namely, as to the application of that rule of construction which says, that where you find a gift in clear and express terms, you are not to permit subsequent and less distinct words to throw a doubt upon the former clear expressions. I cannot come to the conclusion that the clear and express gift to the nephews and nieces in this case is displaced by the subsequent words. I hold that there was a clear gift to the nephews and nieces, and that, if there is any substitution at all, it is only to the children of those nephews and nieces (if any), who died in the testator's lifetime leaving children."
In Bubb v. Padwick, 13 L.R. (Chan. Div.) 5, the Vice-Chancellor *Page 513 
followed the doctrine laid down in Hutcheon v. Mannington,supra, and Martin v. Martin, supra, and held that the condition was void for uncertainty. He stated (at p. 520):
"They are clearly entitled to receive their shares immediately upon the death of the testator, or as soon afterwards as they attain the age of twenty-one years; for the rule of this court has always been that legatees are entitled to receive their shares when the shares become vested. * * * (1) — that where there is a gift of property, with a gift over if the legatee dies without receiving it, that gift over is too vague and indefinite; it is simply regarded as void, and the original gift remains.
"There is another, and, to my mind, most conclusive, reason why it should not be acted upon in any case, which is, that then the gift is to go over upon the mere accidental circumstance of the legatee not having received the share. It may be that the legatee is abroad and does not know of the death of the testator, and from that circumstance is prevented from receiving his legacy. It would be a grievous hardship that his share should go over because he was accidentally absent and could not receive that which the trustee would be willing to pay him if he were present.Instead of depending upon the will of the testator, the legacywould depend upon the conduct or the will of other persons. * * * The same thing might happen if the trustee cannot get theassets in; and in that case also, although the right to receive the legacy had arisen, the legatee would not receive it. That result would be most irrational, and contrary to the decisions for the last ninety years." (Italics mine.)
In Brooke v. Lewis, 6 Madd. 358; 56 English Reprints 1128, the court said:
"This testator annexes to the gift of his residuary estate the condition, that the legatees shall be living at the period of distribution. It is plain he did not consider the term of six months, when his legacies are to be paid, as being necessarily that period, because he directs the moneys to be received from time to time after that period to be invested for the purpose of accumulation until distribution. The testator *Page 514 
therefore had in his view the period of actual distribution. Insuch cases courts of equity consider the period of actualdistribution within the intention of the testator, to be thatperiod at which a distribution might be made if the trustees actwith reasonable diligence, and for convenience have adopted, as arule in cases which bear an analogy to this, that a year afterthe death of the testator is the period within which his propertymight with reasonable diligence be administered. I must therefore declare that the testator's residuary property is to be divided amongst the legatees named, who were living at the end of one year after his death. It is clear in this case that theactual distribution might have been made at this time, for theMaster reports that the property was actually converted intomoney at the end of eleven months." (Italics mine.)
In In re Collison (Collison v. Barber), 12 L.R. (Chan.Div.) 834, the court among other things said (at p. 838):
"In my opinion the `division' of the estate means the period allowed by law for the division, that is, the expiration of twelve months after the testator's death. I must give some meaning to the words, and I think that is a reasonable meaning, and one which does not leave it to the caprice of the trusteesto fix when the vesting or divesting of the shares shall take place. * * * The reason why I reject the actual time of division is to be found in Martin v. Martin (2) and Minors v.Battison (3):" (Italics mine.)
See In re Wilkins, 18 L.R. (Chan. Div.) 634, where the court said (at p. 637):
"It appears to me that there are only two possible periods to which the words can relate. The first is the end of the period which the law allows for the distribution of the estate of deceased persons, that is, twelve months from the death of the testator; the other is the period when the last farthing of assets has been got in and actually divided. If the latter view is to be adopted, it is obvious that the utmost inconvenience would result, for nothing could safely be distributed until after every farthing of assets had been got in, however remote and however inconsiderable, for otherwise the share of a legatee who had received his share, but who had died *Page 515 
before the others had received their shares, would have to be refunded by his representatives. No division could be made until a total and contemporaneous division of the whole estate could be made. Convenience, therefore, points to the construction that the period of twelve months from the testator's death, when the estate ought to be distributed, ought to be taken as the period of the `final division' of the estate."
See Clason v. Clason, 18 Wendell 369, and Manice v.Manice (Court of Appeals, New York), 43 N.Y. 303, where the court said (at p. 368):
"A similar rule is applied to gifts of shares or legacies to be paid out of a fund or surplus to be collected in or ascertained and divided, and in those cases the interests of the legatees are held to vest absolutely before the fund is collected, or the surplus ascertained, or division actually made; and it is held that a limitation over to take effect in case of the death of the legatee before he has received his share, does not take effect, if the legatee lives to become entitled to it, though he died before it has been paid. (2 Jarman on Wills, chap. 20, § 3, p.539, 2d Am. ed.; Gaskell v. Harman, 6 Ves. 159, and S.C. onAppeal, 11 Ves. 490; Wood v. Penoyre, 18 Ves. 325; In reArrowsmith's Trusts, 2 De Gex, Fisher and Jones, 474; Hutcheon
v. Mannington, 1 Ves. Jun. 366). And this rule was applied in its full force to the case of a mixed fund of realty and personalty. (Martin v. Martin, L.R. 2 Eq. Cas. 404). And where the terms of a bequest import a gift, and also a direction to pay at a subsequent time, the legacy vests and will not lapse by the death of the legatee before the time for payment has expired, but will pass to his personal representatives. (Traver
v. Schell, 20 N.Y. 89; Everitt v. Everitt, 29 N.Y. 30."
In Jarman on Wills (7th ed.) 2119, the following appears:
"Death before `receiving' a legacy. — Executory gifts over in the event of legatees dying before `receiving' their legacies have given rise to much litigation. Actual receipt may be delayed by so many different causes that the Court is unwilling to impute to the testator an intention to make that a condition of the legacy, and thus indefinitely postpone the absolute vesting of it. If, therefore, the will points out a definite time when the right to receive the legacy accrues, either expressly, as by directing payment at a particular age or time, or by *Page 516 
implication from the dispositions of the will, as upon the determination of a prior life estate, the gift over will be referred to that time. * * *."
And on p. 2120 appears:
"If no such period is indicated by the particular will it becomes a question whether there is not some time at which, according to the general law regulating the subject, the gift may properly be said to be receivable and to which the testator may fairly be supposed to refer."
The point in question was considered by this court in Miller
v. Colt, 32 N.J. Eq. 6; affirmed, 33 N.J. Eq. 362. In that case the testator's will provided:
"One other of said shares I order and direct forthwith in like manner to be paid over to Thomas O. Colt, first deducting from said share the sum he shall stand charged with on my books at tht time of my death. But if he dies before distribution, leaving lawful issue, then my said executors are to hold such share in trust for such lawful issue, * * * and for want of such issue, to and among my other children * * *." (Italics mine.)
By a decree entered on September 15th, 1868, it was decreed that all the debts and charges against the estate had been paid, except certain legacies. Chancellor Runyon there said (at p.23):
"Manifestly the rights of the complainant do not in anywise depend on the question whether the share was converted or not.Williams on Ex'rs., 1228; Hutcheon v. Mannington, 1 Ves. Jun.366; Post v. Herbert's Ex'r., 12 C.E. Gr. 540. It would be enough that the legacy vested on the death of the testator, was not defeasible by the death of Thomas O. Colt without lawful issue after distribution, and that he did not die till after distribution might have been made."
In Joseph v. Utitz, 34 N.J. Eq. 1, the testator died in December, 1878. By his will he divided all of his real and personal estate, subject to certain changes, into four equal parts and gave one of such parts to each of his three daughters. He gave the fourth part to his trustees in trust for his son, Phineas, for life, and after his death to his daughters. He then provided: "In the case of death of any of my said *Page 517 
daughters before my decease, or before the death of my son Phineas, or before receiving her bequest, leaving lawful issue, such issue is to take * * *." Prior to September 2d 1889, the executors paid all of the debts and pecuniary legacies and nothing remained to be done but to convert the personal estate into cash and make division. In December, 1880, Rosa, one of the testator's daughters, died leaving a husband and children. The question presented was whether her share of her father's estate was payable to her children or to her executor. In holding the shares vested indefeasibly, Chancellor Runyon said (at p. 3):
"Those shares vested in them on the death of the testator, and were payable to them in due course of administration of his estate, and Rosa's title to her share was not defeated by her dying before the division was actually made. Wms. on Ex. 1288;Hutcheon v. Mannington, 1 Ves. Jun. 366; Miller v. Colt, 5Stew. Eq. 6; S.C. on Appeal, 6 Stew. Eq. 362. * * * In the case in hand, the distribution might in fact have been made beforeRosa's death, and that it was not made was due merely to the factthat the executors delayed it. The complainants will be directed to pay the share in question over to the executors of Rosa." (Italics mine.)
In Cook v. McDowell, 52 N.J. Eq. 351; 30 Atl. Rep. 24, the testator in the sixth paragraph of his will provided as follows:
"`I give, devise and bequeath all the rest and residue of my property both real and personal to my six children, Emma S. Cook, wife of William W. Smalley; Ella P. Cook, Lewis S. Cook, Laura K. Cook, Frederick H. Cook and Jessie M. Cook, to be divided equally among them share and share alike, to them, their heirs and assigns forever, in case any of my said children die before receiving their share leaving issue then I give, devise and bequeath to such issue the share the parent would have taken if living.'"
Testator's wife and children survived him. On May 3d 1893, before there was any distribution of testator's estate, Frederick, one of his children, died without leaving issue, having made a will by which he devised one-half of his estate to his affianced wife, Maggie V.D. McDowell, and the remaining one-half to his three unmarried sisters. The complainant *Page 518 
executors filed a bill for construction. The Chancellor held that Frederick took the vested estate in the whole residue at his father's death, which he could lawfully dispose of by will, and that the words "before receiving" were used in the sense of the vesting of the interest instead of in the sense of its being had in actual possession. To the same effect is the case of Yawger
v. Yawger, 37 N.J. Eq. 216.
As hereinabove stated I believe that the interest of Louise in the testator's estate was vested. The estate is entitled to a refund of the excess payments made to Louise as aforesaid.