CHARLES CARROLL, Chief Judge.
Albert Rapaport died on May 29, 1951, survived by his widow and seven children. His will, which was executed September 21, 1943, contained a number of bequests to charitable organizations and to individuals. Isadore Rapaport, Dorothy West and Benjamin Rapaport (children of the testator) were named as executors, and elsewhere in the will they were referred to as “executors and trustees.”
In paragraph Eighth of the will the testator devised and bequeathed the residue of his estate to his executors in trust for liquidation thereof, with direction for distribution of the proceeds, one eighth to the widow, and to each of the seven children, “a %th share of the proceeds to be realized from the sale or disposal of any realty or personalty, as their property, absolutely and forever.” Also, as a part of paragraph Eighth it was provided that the “executors and trustees” could manage the testator’s real property “for so long and in such manner as to inure to the advantage and benefit of the beneficiaries,” and that net income derived therefrom prior to sale should be included in the residuary estate.
Paragraph Ninth of the will stated a condition as follows:
“In the event that any beneficiary designated herein shall predecease me, or in the event that any unmarried beneficiary shall marry anyone other than a member of the Jewish faith according to Hebrew law, the share to which he would be entitled shall lapse and merge with the residuary estate.”
On July 3, 1957, Harry Rapaport married Marion Melsness, a woman who was not a member of the Jewish faith, in a marriage ceremony which was not performed according to Hebrew law. Beginning ten years after the death of the testator, and four years after Harry Rapaport married, the executors made a number of partial distributions to Harry Rapaport as one of the designated distributees of the residue. Those payments, aggregating $3,171.19 were made between January of 1961 and January of 1964. Two months after the last of those! payments to Harry Rapaport he died, on March 10, 1964. He left his widow but no lineal descendants. The *318 widow became the administratrix of his estate.
On January 5, 1965, the executor of the estate of Albert Rapaport filed an action in the civil court of record in Dade County against Marion Melsness Rapaport as administratrix of the estate of Harry Rapaport, seeking recovery of the sum of $3,171.-19 which Jtiad been paid to Harry Rapaport during his lifetime and subsequent to his marriage, contending that by virtue of the condition stated in paragraph Ninth, the right of Harry Rapaport to take under the will had become forfeited by his marriage in 1957.
The administratrix of Harry Rapaport’s estate answered, contested the claimed construction of paragraph Ninth, and she counterclaimed for the balance of the %th share of the residue which had been bequeathed to Harry Rapaport, amounting to approximately $4,500. The widow of Harry Rapa-port died pending the cause. As adminis-tratrix she was succeeded by Community National Bank and Trust Co., as administrator de bonis non of the estate of Harry Rapaport.
Both parties moved for summary judgment. The motion of the defendant for judgment on the counterclaim was denied and the motion of the plaintiff was granted. Summary judgment was entered in favor of the plaintiff for the amounts previously paid to Harry Rapaport, with interest thereon and costs, in the aggregate sum of $4,-114.79. On rehearing the amount of the judgment was reduced to $3,987.94. The defendant appealed.
In granting summary judgment for the plaintiff the trial court held that the condition relating to marriage as set out in paragraph Ninth of the will was a condition subsequent, and that the marriage entered into by Harry Rapaport had operated to cause the bequest to him to lapse.
In our view that conclusion reached by the trial judge was not a correct construction of the provisions of this will, and we reverse. At the outset, it should be noted that paragraph Ninth, which provides that if any beneficiary shall predecease the testator or shall marry in a manner contrary to his wish “The share to which he would be entitled shall lapse,” contains no language relating to time of distribution as distinguished from the time of the death of the testator. However, in the two succeeding paragraphs numbered Tenth and Eleventh, the testator did impose conditions relating to time of distribution. Those provisions were as follows:
“Tenth: In the event that my son, Jack Rapaport, shall not be alive at the time of distribution, it is then my express will that such share to which he would be entitled shall be distributed equally share and share alike between my beloved grandchildren, Robert, Diane and Lous, the children of my son, Jack Rapaport.
“Eleventh: In the event that my son, Benjamin Rapaport, is not alive at the time of distribution, it is my express will that the share to which he would be entitled shall be distributed pro rata among my remaining children.”
Referring back to paragraph Ninth, if the testator had intended that the share bequeathed to a child should lapse if he should enter into such a marriage any time prior to distribution, the testator could have so stated in the will. The fact that he did not do so, yet inserted conditions in the two succeeding paragraphs of the will for other distribution or the lapsing of shares of two of his children if they should “not be alive at the time of distribution” makes his failure to refer to the time of distribution with reference to 'the marriage condition in paragraph Ninth more meaningful. Moreover, in paragraph Ninth the marriage condition was coupled with the provision that if any beneficiary should predecease the testator the share of such beneficiary would lapse and merge with the residuary estate, a provision which could operate only as to those who died before the testator. The coupling *319 of the provision for lapsing on marriage with the “predecease” lapse clause, without fixing time of distribution* as distinguished from the time of death of the testator, as to the former, invites a construction that the two conditions in paragraph Ninth relate to the time of the testator’s death.
It was not until fourteen years after the testator died and approximately eight years after Harry Rapaport married Marion Melsness that the executors made a claim that his marriage, after the death of the testator, could affect his right to take under the will. During that extended period, and while Harry Rapaport lived, no such construction was contended for by the executors. On the contrary, as late as January of 1964, partial distributions to Harry Rapa-port, years after his marriage, shows that those charged with the administration of the estate regarded him as entitled to take under the will.
Prompt administration of estates is desired in law. Conditions subsequent affecting distribution need clarity of statement. Not only does paragraph Ninth fail to contain any clear statement that the condition relating to marriage shall extend to time of distribution, but for the reasons stated above, that provision, viewed in the light of the succeeding paragraphs Tenth and Eleventh and of the will as a whole, may not properly be construed to- extend beyond the time of death of the testator, or until final distribution of the residue. We have been shown no Florida decisions dealing with the precise question involved here. But see Rusch v. Melosh, N.J.Ch. (1943), 133 N.J.Eq. 502, 33 A.2d 390, aff’d 134 N.J.Eq. 409, 36 A.2d 8.
Accordingly, we hold it was error to grant summary judgment in favor of the plaintiff and that the defendant’s motion for summary judgment should have been granted. The judgment appealed from is reversed and the cause is remanded with direction to enter summary judgment in favor of the defendant on defendant’s counterclaim.