102 N.J. Super. 442 (1968)
246 A.2d 142
IN THE MATTER OF THE ESTATE OF ANNA G. DUNNING.
Superior Court of New Jersey, Appellate Division.
Argued June 10, 1968.
Decided August 20, 1968.
Before Judges CONFORD, LABRECQUE and FULOP.
Mr. Richard S. Hyland argued the cause for appellant Elva Dunning, executrix of the estate of Charles R. Dunning (Messrs. Hyland, Davis & Reberkenny, attorneys).
*443 Mr. Peter E. Driscoll argued the cause for respondent Elizabeth E. Beckham, executrix of the estate of Anna G. Dunning (Messrs. Archer, Greiner, Hunter & Read, attorneys; Mr. John G. Womack, on the brief).
The opinion of the court was delivered by CONFORD, S.J.A.D.
Defendant Elva Dunning is the surviving spouse and executrix of the estate of Charles Dunning, deceased, he being one of three conditional legatees named in the will of their mother, Anna Dunning, to share equally in the assets to be passed under the residuary clause thereof. The other two are plaintiff Elizabeth E. Beckham, executrix of that will, and Archibald E. Dunning. This matter comes to us on defendant's appeal from an order of the County Court directing distribution of the residuary estate in equal shares to plaintiff and Archibald Dunning.
A detailed exposition of the pertinent facts is necessary for a full understanding of defendant's appellate arguments.
The will here involved made specific provisions for the three children of testatrix, the residuary clause thereof, paragraph THIRD, providing:
"All the rest, residue and remainder of my estate, I give, devise and bequeath absolutely and in fee to my issue per stirpes. In the event that any child of mine predeceases me or dies prior to receiving his or her share of my estate, without leaving issue surviving, then the share of the child so predeceasing shall be divided, per stirpes, between my surviving children and issue of deceased children."
At her death on September 16, 1966 testatrix' residuary estate consisted of shares of stock in the Philadelphia National Bank, valued at $7,590, and several bank accounts, worth in the aggregate approximately $17,000. The will was probated and plaintiff qualified as executrix September 27, 1966. She made partial distribution of the residuary estate in November 1966, delivering to each of the other two of testatrix' children, including defendant's decedent, and to herself, a one-third share of the stock certificates. Charles' *444 shares, at his request, were made out to himself and his wife jointly. A New Jersey transfer inheritance tax return and a fiduciary income tax return were filed by plaintiff shortly thereafter, each representing that testatrix' three surviving children were testamentary beneficiaries.
On May 9, 1967 plaintiff's attorney forwarded to her several copies of a release, refunding bond and an informal account; the attorney directed that in advance of distribution of the remainder of the residuary estate each of the three children-beneficiaries should execute a release and refunding bond, which recited receipt of $5,234.58, and give written consent to the informal account. Pursuant to her brothers' requests, plaintiff "took [the documents] to [her] office [in Philadelphia] and photostated everything they wanted photostated. * * * [She] took them home with [her], put them together, took them to the office, and mailed them in the post office the following day." Although plaintiff had received the documents from her attorney on May 10, 1967, they were not mailed to her brothers until May 18, 1967. The delay was due in part to "household duties. I do all my own work. That comes first."
Charles Dunning received and read the papers on Friday, May 19, 1967, but although he was satisfied with them he did not sign them, as he was at that time preoccupied with plans for a family wedding scheduled for the next day. Charles and his wife attended the wedding on Saturday, May 20, 1967, and shortly after their return home Charles suffered a massive coronary attack and was taken to Delaware County Memorial Hospital in Pennsylvania, where he was placed in the intensive care unit. Plaintiff received a call from Elva Dunning at 11 P.M. that night, May 20, advising of Charles' illness. She was told he was not allowed to receive any visitors but his wife.
By Sunday morning, May 21, 1967, Charles' condition had taken a turn for the better; he was laughing and joking and "he asked [Elva] to bring in the papers so that he could sign [them, but she] just wouldn't do it, [because *445 of his condition]." Sunday evening Elva telephoned plaintiff again and this time told her she could visit her brother the next day, Monday the 22nd. Plaintiff did visit that day but did not bring with her the estate check for Charles' share because, she said, "why would I bother a man as ill as that with a check?" and she "never gave the check a thought." Plaintiff said she did not expect Charles to die; her other brother, Archibald, had had a similar attack several years before and had recovered completely. Charles, still hospitalized, suffered a second heart attack on Monday evening, May 22, 1967, and at 12:10 A.M., Tuesday morning, May 23, 1967, he died, without leaving issue.
Plaintiff learned of Charles' death by telephone at 1 A.M. Tuesday morning (May 23), and during the day she paid a condolence call to Elva at her home. While there she told Elva that her attorney had asked her to have Elva return the release and refunding bond, as the papers would "have to be all changed." Plaintiff testified that in the late evening of that same Tuesday she made out checks to herself and to Archibald Dunning, each passing a one-third share in the residuary estate bank accounts. She numbered Archibald's check as number 9 and her own as number 11. The stub for check 10 was marked void. Plaintifl testified this was because there had been some kind of error on that check, but she could not remember specifically what. It was not her intention, she said on cross-examination, to make that check out to Charles.
Plaintiff in due course filed a complaint in Camden County Court, Probate Division, seeking approval of her first and final account and an order of distribution "directing that the remaining estate assets be distributed in accordance with paragraph THIRD of the will to the two surviving children of ANNA G. DUNNING, deceased." Defendant contested the proposed distribution, asserting that she in her representative capacity was entitled to a one-third share of the residuary estate. After hearing the arguments of counsel *446 the County Court entered judgment as requested by plaintiff.
The court reasoned and concluded that: (1) Charles Dunning had predeceased actual payment of his gift (delivery of the estate check), and that with clauses of the type of paragraph THIRD here, actual payment of the legacy is the measure of receipt, i.e., it is actual payment which the conditional legatee must survive in order for his gift to vest; (2) the equitable principle of constructive delivery, regarded in In re Laise's Estate, 18 N.J. Super. 395 (App. Div. 1952), as invocable on a certain showing to avoid lapse of a gift notwithstanding the conditional legatee's death preceded actual distribution of his share, would not be applicable here for "there was no evidence adduced which would indicate that Elizabeth E. Beckham did not act with due diligence as executrix or that she engaged in any untoward activity which would demonstrate purposeful delay of the settlement of the estate * * *."
Much litigation has taken place over testamentary gifts which condition vesting on the event of the beneficiary's surviving to receive the gift or to distribution or payment thereof, or words of similar import. See Annotation, 142 A.L.R. 136 (1943). The editor of the cited work summarizes the cases (at p. 137) to reflect the view that in the absence of a clear indication that the testator intended that there should be an indefeasible vesting only if the legatee should survive to an actual receipt of the request, the courts will predominantly construe the gift over as having reference to death before the gift is de jure payable, rather than before actual receipt.
One New Jersey case seems to follow the foregoing approach, Rusch v. Melosh, 133 N.J. Eq. 502 (Ch. 1943), affirmed o.b. 134 N.J. Eq. 409 (E. & A. 1944). There the testator gave his wife a gift of certain realty and one-fourth of his personalty in lieu of dower, but subject to the condition that should she die "prior to the distribution of my estate" her share should fall into the residuary estate. Testator *447 died October 17, 1937. The date of probate does not appear. The wife died July 30, 1941. There was some litigation by and against the estate, but the court found that by April 1, 1940 the amount of assets in the estate had been determined, all creditors fully paid, and the executors were in a position to have filed their inventory and final accounting. It further concluded that nothing transpired from that date until the wife's death which would have prevented such filing. "I believe those records could and should have been filed." (133 N.J. Eq., at p. 505). It was deemed appropriate to apply the maxim that equity regards as done that which should have been done (Ibid.).
But the opinion in Rusch then proceeded to shift its rationale to the thought that the testator should be regarded as having intended that "distribution" would take place at the end of the one-year statutory period (now 18 months after probate, N.J.S. 3A:25-1) by which legacies were payable, regardless of whether circumstances developed in the interim which might prevent actual distribution within that period (at pp. 507-508).
Two much earlier decisions of our courts give comfort to the concept that in a clause of the type here involved constructive receipt of the testamentary gift prior to the death of the donee will be adjudicated when the gift is administratively ready for distribution prior to such death. Miller v. Colt, 32 N.J. Eq. 6 (Ch. 1880), affirmed o.b. 33 N.J. Eq. 362 (E. & A. 1880); Joseph v. Utitz, 34 N.J. Eq. 1 (Ch. 1881). The tenor of these opinions, both by Chancellor Runyon, is that the stated criterion would be applicable without regard to the length of time which transpired after testator's death and before the donee died; but any such reading of the cases must take into account the circumstance that in each case donee's death in fact occurred later than the then one-year statutory period for payment of legacies. Cf. Cook v. McDowell, 52 N.J. Eq. 351 (Ch. 1894); Bonnell v. Bonnell, 47 N.J. Eq. 540 (Ch. 1890), both hostile to *448 the idea of defeasance of the conditional donee's bequest by death prior to actual distribution.
In the most recent New Jersey case on the point, In re Laise's Estate, supra (18 N.J. Super., at p. 339), the court read the Miller, Joseph and Rusch cases as controlled by the fact of lack of due diligence in administration and settlement of the respective estates.
In Laise where the testamentary language couching the condition read, "In the event of the death of my mother * * * prior to the distribution to her of her one-third equal part * * *," and death took place after the expiration of the statutory distribution period, but there was no default of diligence in administration, the court held that other provisions of the particular will made manifest the intention of the testator that the event of "distribution" in the critical clause had reference not to the date of expiration of the statutory period for distribution but solely the time when distribution could have been made in the exercise of due diligence in settling the estate. There being no assertion of absence of due diligence, the court affirmed an adjudication of lapse of the gift.
See for a discussion of all the cases 6 N.J. Practice (Clapp, Wills and Administration) § 661, pp. 202-04 (1962).
The foregoing review indicates that there has been no reported New Jersey case, and the parties have cited none elsewhere, clearly holding for constructive receipt by a donee in the case of a comparable clause where the donee died before actually receiving the gift and earlier than expiration of the statutory period for payment of legacies. In In re Powers' Estate, 98 N.Y.S.2d 457 (Surrog. Ct. 1950), affirmed O'Malley's Will, 278 App. Div. 638, 103 N.Y.S.2d 122 (App. Div. 1951), the court held there was a lapse where the conditional donee lived only six weeks after probate of the will. But it did not there appear that the estate was ready for distribution prior to donee's death.[1] A possibly *449 different result was arrived at in In re Estate of Taylor, 66 Cal.2d 855, 59 Cal. Rptr. 437, 428 P.2d 301 (Sup. Ct. 1967). Probate was November 26, 1963; the conditional donee died March 15, 1965. She was ill and had been asking the executor for distribution for some time. A hearing on the executor's petition for distribution had been set for March 29, 1965. The court held that the estate could easily have been distributed before the donee's death and therefore the donee's interest would be adjudicated vested notwithstanding a statute providing that a condition precedent in a will shall prevent vesting until the condition is substantially fulfilled except where fulfillment is impossible.
We find it unnecessary here to determine whether, as a general rule (absent a clear indication of the testator's intention, one way or the other, from the will or extrinsic circumstances), constructive receipt by the conditional donee will be adjudicated short of the 18-month statutory period merely for the reason that the estate was, or should have been, ready for distribution prior to the donee's death.
Preliminarily, we cannt say that there is sufficiently clear indication of the testatrix' actual intent. The testamentary clause itself, while it sounds in tones arguably inferential of an intent to keep the residuary estate in the blood line of the testatrix, does not strongly persuade us that in a juncture such as was here actually presented the testatrix would have wanted to defeat her son's obvious desire that his widow take his share, practically in his hands before his untimely death. The clause is a fairly standard per stirpes disposition. There are no extrinsic circumstances indicative of hostility or unfriendliness between testatrix and Charles' wife. We may assume that the natural propensities of the average parent include the furtherance of a son's normal desire for the financial protection of his wife after his death. Note that Charles immediately put the bank shares earlier distributed to him in the joint names of himself and the defendant.
*450 But the cornerstone of our conclusion that Charles' gift should not be deemed to have lapsed is the fact that the mechanics for its transmission to him was in actual course of operation, by the initiative of the executrix, well before his death. Her attorney had instructed her to pay it out. All that remained to be done was an exchange of a signed refunding bond and release for a check. The bond and release had been sent to Charles for execution. He was satisfied with the documents. Plaintiff and brother Archibald got their checks the very day of Charles' death. Solicitude for Charles' condition when stricken by the heart attack was the reason advanced by plaintiff for not bringing him the estate check she was about to disburse to him and may have already drawn. ("Why would I bother a man as ill as that with a check?") Yet that very solicitude turned out to become the causative instrumentality for the here asserted voiding of Charles' inheritance when death suddenly followed the remission in his condition. We cannot believe that in this peculiar set of circumstances a defeat of the bequest would subserve either the interests of justice or the wishes of the testatrix could they be known. We hold that in legal contemplation, for purposes of construction of the will, Charles received the bequest prior to his death.
Judgment reversed.
NOTES
[1] The court said the "normal" period for estate administration is seven months. 98 N.Y.S.2d, at p. 459.