[No. 12732–2–I.   Division One.   June 3, 1985.]

*In the Matter of the Estate of*
CARL L. CARLSON.

ELORA COLLINS, *as Executrix, Appellant,* v.
WASHINGTON MUTUAL SAVINGS BANK, *as*
*Executor,* ET AL, *Respondents.*

*John F. Raymond,* for appellant.

*Craig Gordon, Foster, Pepper & Rivieri,* and *John Pierce,* for respondent Washington Mutual Savings Bank.

*Joseph Breidenbach,* for respondent John Carlson.

GROSSE, J.—Appellant Elora Collins, executrix of the estate of Nellie Carlson (Nellie), appeals the trial court's exclusion of the estate from a share in the estate of Carl L. Carlson (Carlson) at final distribution. She contends Nellie's full interest vested prior to Nellie's death. We disagree and affirm the trial court.

Carlson's will provided that Nellie would receive a share in his estate unless she were to "die prior to distribution" of the estate, in which case her share would go to others specifically named. The central question in this case is whether Nellie's contingent share vested prior to her death 16 months after Carlson's death even though the estate had not been formally closed and finally paid out. This turns on the meaning given to "distribution" and the circumstances of the estate's administration.

Carlson died on August 12, 1980, at the age of 81. His will named Washington Mutual Savings Bank as nonintervention executor. Carlson was survived by a sister in Swe-

den and by a nephew and two sisters–in–law in Seattle, including Nellie who was then 82. Each was made a primary beneficiary of his will. The will provided that half the estate go to the sister in Sweden or her surviving children in equal shares. The remaining half was divided equally among the three Seattle relatives subject to the following conditions of survival for the two sisters–in–law:

> [I]n the event either Bertha Carlson or Nellie Carlson should predecease me or die prior to distribution of my estate, then the share of the sister–in–law so dying shall be divided equally between my nephew, John Burton Carlson and the remaining sister–in–law.

If the nephew predeceased Carlson, the will directed that his share go to the nephew's surviving children in equal shares.

This relatively simple estate consisted of liquid assets held in a living trust at the Bank and two small parcels of land in Alaska. All claims against the estate had been paid by the end of 1980. The estate was valued at nearly $200,000 for tax purposes (in early 1981), including the Alaska land at a total of $10,600. A partial distribution of $90,000, just over half the available estate, was made on April 7, 1981, at the request of the beneficiaries. Nellie received her share of $15,000. State and federal tax returns were filed May 12, 1981, exactly 9 months after Carlson's death, the last day permissible under the federal statute. The estate had been reduced to cash by June 31 except for the Alaska realty. The federal tax release necessary for final closure of the estate was received November 4, 1981. Nellie died 29 days later on December 3, 1981. The Bank engaged an Alaska attorney for the ancillary probate of the land in November 1980. In January 1981, the Bank received permission from the beneficiaries to have the Alaska property sold. The sale closed in May 1982.

Four months after the Alaska land sale closed, Bertha Carlson requested the estate be distributed due to her pressing financial needs. One month later, in October 1982, the Bank petitioned the superior court for instructions

concerning the proper distribution in light of Nellie's death and the survivorship clause. The trial court affirmed the partial distribution. It found the will's language clear and unambiguous requiring Nellie to survive final distribution for her interest to vest. It further found that the Bank had acted in good faith pursuant to RCW 11.48.010 and that distribution of the estate had not been postponed by unreasonable delay on the part of the Bank. The court held that her share passed to Bertha and John Carlson under the survivorship clause. Nellie's estate challenges all the trial court's findings except as to the propriety of the partial distribution.

Appellant contends the survivorship clause is ambiguous since "distribution" is not further defined and is therefore subject to at least four possible interpretations, especially in view of the partial distribution that was made. Thus, Nellie's interest should have vested on the partial distribution or by a de jure rule of vesting; either within a specific period of time in which an estate should normally be administered, or when this estate should have been distributed. Appellant claims the latest the estate should have been distributed was immediately upon receipt of the federal tax release by the Bank.

Respondents reply that the questioned language must mean "final" distribution to be consistent with Carlson's intent which may be easily ascertained from the four corners of the will. The claimed intent is that Nellie receive only if she is alive to actually enjoy the bounty. That intent is supported by the disinheritance clause if she were to "die prior to distribution" in contrast to the unrestricted gifts to Carlson's sister in Sweden and his nephew in Seattle.

The phrase "die prior to distribution", or a similar one, has not been construed by our courts. It has been the subject of numerous reported decisions in other jurisdictions with a range of results.[1] We thus cannot agree that

---

[1]*See In re Estate of Hampe*, 85 Cal. App. 2d 557, 193 P.2d 133, 135 (1948), construing "die prior to distribution" to require the legatee survive to the date of

this phrase is clear and unambiguous. Its chameleon–like character is accentuated by the setting of this case where a partial distribution was made and "distribution" is not further described in the will. The phrase's meaning is susceptible to whatever construction the reader wishes to place upon it.

Since Carlson's intent as to when Nellie's full interest vests is not obvious from the phrase alone, it must be ascertained from the context of the will if possible. *In re Estate of Bergau,* 103 Wn.2d 431, 693 P.2d 703 (1985). If that intent can be ascertained and be lawful, it supersedes judicial rules of will construction. *In re Estate of Griffen,* 86 Wn.2d 223, 226, 543 P.2d 245 (1975).

While the phrase "die prior to distribution" is by itself ambiguous and susceptible to many interpretations, we can ascertain its meaning from its context in Carlson's will. We hold that Carlson's intent was for Nellie's interest to vest in that portion of the legacy which was distributed to her while she was alive. The effect of the will as a whole is to award Nellie her proportional share of any distribution made if she is alive to receive it. We hold that in this will "distribution" is as distribution occurs. Her interest as to the partial distribution, and nothing more, vested on its receipt.[2] Absent a showing that subsequent partial or final

---

entry of the decree of distribution for the legacy to vest, but citing contrary cases from Pennsylvania, New York, New Jersey, Ohio, and Wisconsin. This strict literal rule was implicitly modified in *In re Estate of Taylor,* 66 Cal. 2d 855, 428 P.2d 301, 304, 59 Cal. Rptr. 437 (1967) and *In re Estate of Germond,* 4 Cal. 3d 573, 483 P.2d 769, 94 Cal. Rptr. 153 (1971). *See also* the comments and cases collected in the two annotations on the subject at 142 A.L.R. 136 (1943) and 59 A.L.R.3d 1043 (1974). The conflict in this area stresses the degree of preciseness required in the language of such limitation clauses for them to be enforced over the rules of will construction which in effect invoke some form or another of a de jure basis for vesting the legacy. *See* 59 A.L.R.3d at 1061–62. These requirements of specificity are aimed at ascertaining the testator's intent in reducing or eliminating any opportunities for fraud or improper acts by administrators which might change who actually receives. If any general rule can be found, it appears to be the literal rule in California as modified in *In re Estate of Taylor, supra.*

[2]*See In re Estate of Dunning,* 102 N.J. Super. 442, 246 A.2d 142 (1968),

distributions were improperly delayed,[3] failure to survive until they were made defeated Nellie's contingent interest. On her death, Nellie's interest in the remainder of the estate passed to Bertha and John Carlson under the terms of the will.

Whatever may be uncertain from the will's language as to the date or time period in which Nellie's interest in the full legacy should have vested, the will as a whole evinces Carlson's clear effort to provide for Nellie only while she was alive and to provide for the contingency of her death.[4] This effort should not be frustrated where there has been no showing that the Bank was dilatory in administering the estate, nor a showing that the estate—even the liquid Washington portion of it—should have and could have been distributed prior to Nellie's death.

We decline to adopt or reject the California early vesting

---

where a partial distribution of an estate with a die before receipt of share in the estate clause apparently did not vest the legatee with rights beyond the partial distribution. We find nothing in RCW 11.72.006 or any Washington cases to suggest that receipt of a partial distribution vests a contingent interest as to the undistributed residue. Our case law has consistently recognized that "[t]he function of a decree of distribution is to declare the title which accrues under the law of descents, or under the provisions of a will" rather than to create a title. *Parr v. Davison*, 146 Wash. 354, 357, 262 P. 959 (1928). *See also Norris v. Norris*, 95 Wn.2d 124, 142, 622 P.2d 816 (1980) (Brachtenbach, J., dissenting); *Griffin v. Warburton*, 23 Wash. 231, 62 P. 765 (1900). We would do violence to the well settled character of decrees of distribution were we to hold this partial distribution vested appellant with an interest in the undistributed residue.

[3]The partial distribution made in April 1981 was proper under the governing statute, RCW 11.72.006, and the circumstances. *In re Estate of Germond*, 4 Cal. 3d at 580 n.3, recognizes that "[i]n some circumstances a reasonable executor might be required to make prompt preliminary distribution", although that was not such a case. This was such a case and it is to the Bank's credit that it made the partial distribution shortly after the statutory claim period expired and prior to filing state and federal taxes, keeping a reserve for unexpected contingencies and the Alaska probate.

[4]*See In re Estate of Riemcke*, 80 Wn.2d 722, 729, 497 P.2d 1319 (1972), requiring the testator's clear intent be given effect even where a contingency occurs which was not contemplated and the will shows the testator's attempt to cover all contingencies.

exception[5] urged by appellant since the trial court found the Bank did not delay distribution of the estate and there is thus no reason to apply it. There is also no basis in the record before us to conclusively determine when the estate could or should have been distributed, a necessary predicate to applying the exception. *See In re Estate of Taylor,* 66 Cal. 2d 855, 428 P.2d 301, 59 Cal. Rptr. 437 (1967); *In re Estate of Germond,* 4 Cal. 3d 573, 483 P.2d 769, 94 Cal. Rptr. 153 (1971). As to adopting a de jure rule of automatically vesting such contingent legacies after a certain period of time based on the "normal period" for administering the

---

[5]The California court in *In re Estate of Taylor,* 66 Cal. 2d 855, 428 P.2d 301, 59 Cal. Rptr. 437 (1967) modified the rule of *In re Estate of Hampe,* 85 Cal. App. 2d 557, 193 P.2d 133 (1948), to provide that a legacy contingent on survival to the distribution of the estate vests when it should have been distributed, in the event distribution has been postponed by unreasonable delay. *Accord, In re Estate of Germond,* 4 Cal. 3d 573, 483 P.2d 769, 773–74, 94 Cal. Rptr. 153 (1971). Where no unreasonable delay has been found, the California courts still appear to vest a contingent legacy such as Nellie's on the date of the decree of distribution under the rule of *In re Estate of Hampe. See In re Estate of Germond, supra.* Even if we adopted the California exception, appellant has the burden of establishing both (1) unreasonable delay on the part of the administrator; and (2) the date prior to Nellie's death when the distribution could and should have been made. The first is contrary to the specific finding of the trial court that the Bank did not delay distribution and acted in good faith at all times. We cannot overturn that finding as clearly erroneous.

As to the date when distribution should have been made, a final distribution could not properly have been made prior to receipt of the federal tax release, disregarding for the moment the Alaska probate. The release was received 29 days before Nellie died. The estate could not be closed without either a formal entry of a final decree by the court under RCW 11.68.100, or a declaration of completion under RCW 11.68.110. Both methods of closing the estate have notice requirements. RCW 11.76.040, which governs the notice for final decrees, requires 20 days' notice by publication after the proposed final decree has been filed. RCW 11.68.110 requires a minimum of 30 days' notice after filing the declaration of completion. The uncontested evidence before us is that the Bank required 2 months to complete its work on an estate upon receipt of the federal tax letter. This period, plus the notice requirement for either method of closing the estate, takes final distribution of Carlson's estate, not including the Alaska probate, well past the date of Nellie's death. *See In re Estate of Germond, supra,* reversing the trial court's finding of undue delay in a complicated estate with an ancillary probate in Iowa where the 22½–month delay was due in part to waiting for the federal tax release.

estate,[6] the making of such a rule is for the Legislature and not the courts.[7]

Equity can and does protect legatees from the dilatory behavior of estate administrators. We see no reason in this case to invoke the equitable powers of the court or the rules of will construction to award part of Carlson's will against his stated intent since there is no evidence of misconduct or undue delay.

The trial court is affirmed.

WILLIAMS and WEBSTER, JJ., concur.

Review denied by Supreme Court August 16, 1985.

---

[6]Such determinate time periods have generally been set by statute. *See In re Will of Denton,* 46 N.Y.S.2d 145 (Sur. Ct. Queens Cy. 1943) (survival of 7–month statutory period for normal administration of estate indefeasibly vested interest in contingent legatee). But the statutes have also been selectively followed. *See In re Estate of Dunning,* 102 N.J. Super. 442, 246 A.2d 142 (1968) (death prior to 18–month statutory period for vesting did not bar receipt of bequest where the mechanics for its transmission were in operation well before death) and *In re Estate of Laise,* 18 N.J. Super. 395, 87 A.2d 362 (1952) (legacy not vested even though the legatee died after 18–month statutory period, construing "prior to distribution to her" literally and finding no absence of due diligence in settling the estate). *In re Estate of Laise* is consistent with the California cases.

[7]We note that the principle underlying nearly all of the rules of will construction offered by appellant is that the testator's intent is not to be frustrated by the action or inaction of others, particularly the estate administrator. Thus the rules of early vesting or a specific period for vesting and the like are designed to prevent abuse of the administrator's control over the estate. The early vesting exception used in California provides courts the means to redress such wrongs as appropriate to each case. A specific period of time for vesting should not be arbitrarily imposed by the courts, especially in light of the tremendous variation in the complexity of estates and the bureaucratic hurdles which must typically be cleared, as in the IRS release letter in this case. The better tactic is for drafters of wills to eliminate such provisions or make sure they state the testator's intent more specifically.