FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2017 AUG -7 AM 9: 27



# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 74674-0-I |
| Respondent, | ) | |
| | ) | |
| v. | ) | DIVISION ONE |
| | ) | |
| EDWARD BYRD BLUNT, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: August 7, 2017 |
| | ) | |

APPELWICK, J. — Blunt was convicted of residential burglary. He contends that the evidence was insufficient to support his conviction, that the trial court abused its discretion in not severing his trial from his codefendants, and that the prosecutor committed misconduct. In a statement of additional grounds for review, he also argues that the trial court lacked jurisdiction, and that he received ineffective assistance of counsel. We affirm.

## FACTS

At about 5:30 a.m. on September 27, 2012, Bill Campbell was walking his dogs near Lake Serene. Campbell saw four men carrying boxes and large bags out of a neighbor's carport. Campbell, who frequently walked his dogs in the area at this time, sensed that "there was something that definitely was not right," and called 911.

Police arrived. Snohomish County Sheriff's Deputy John Sadro was one of the first officers to arrive at the scene. Deputy Sadro observed a damaged lock to

a gate that had "tool marks," and a door into the house appeared to have been pried open.

Lynnwood Police Department Sergeant Coleman Langdon also responded. He observed two males, later identified as Denis Gorbunov and Svein Vik, walking along Serene Way towards a white minivan, and spoke with them. Sergeant Langdon patted down Gorbunov. He discovered a flat prying tool. The police found stolen property from the residence inside the white van. Sergeant Langdon and his K9 swept the house, but they found no other individuals in the house.

Snohomish County Sheriff's Deputy Troy Koster also responded to the scene. He approached a Jeep parked on the side of the road. The hood was warm, as if the car had recently been running. He saw someone lying down in the back seat, later identified as Michael Bruce. He also saw bolt cutters and a backpack "full of something." Deputy Koster spoke with Bruce. Bruce stated that he had attended a barbecue in the area the night before, and was on his way home when the vehicle broke down, so he decided to sleep in it. Police ultimately found items belonging to the residence owner, Sandra Davis, inside the Jeep.

After Deputy Koster detained Bruce, he approached the residence. He saw someone walking towards him. This individual identified himself as Edward Blunt. Blunt stated that he had fallen asleep drunk in the residence's backyard with a woman named Teri. However, police found Blunt's driver's license, as well as a pawn ticket made out to Blunt, inside a backpack that was inside the Jeep in which Bruce claimed to have been sleeping. And, a crowbar was found outside the house.

Three suspects, Blunt, Bruce, and Vik, were tried at a single trial. The prosecution's theory of the case was that Blunt entered the house and committed residential burglary, or alternatively that Blunt was an accomplice to residential burglary. The jury found Blunt guilty of residential burglary. Blunt appeals.

## DISCUSSION

Blunt makes three arguments in his brief. First, he argues that the evidence was insufficient to support his conviction. Second, he argues that the trial court abused its discretion in denying his multiple motions to sever trial from his codefendants. Third, he argues that the prosecutor committed misconduct. And, in a statement of additional grounds for review (SAG), he argues that his counsel was ineffective, that the trial court lacked jurisdiction, and he echoes the severance and sufficiency arguments made in his brief.

I. Sufficiency of Evidence

Blunt argues that the evidence was insufficient to support his conviction for residential burglary. The test for determining the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). When the sufficiency of the evidence is challenged in a criminal case, all reasonable inferences from the evidence must be drawn in favor of the State, and interpreted most strongly against

the defendant. Id. A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom.[1] Id.

Under RCW 9A.52.025, "[a] person is guilty of residential burglary if, with intent to commit a crime against a person or property therein, the person enters or remains unlawfully in a dwelling other than a vehicle." The State's theory of the case included the possibility that Blunt was an accomplice to the crime. A person is an accomplice of another person in the commission of a crime if:

> (a) With knowledge that it will promote or facilitate the commission of the crime, he or she:

> (i) Solicits, commands, encourages, or requests such other person to commit it; or

> (ii) Aids or agrees to aid such other person in planning or committing it.

RCW 9A.08.020(3).

A residential burglary clearly occurred at Davis's house. However, no direct evidence places Blunt in the house. Nor does any direct evidence place Blunt in actual possession of stolen property. But, Blunt admitted to being present on the property of the burglarized home, however he did not admit to being inside the

---

[1] Blunt assigns error to the trial court's denial of his motion to dismiss after the State rested its case. He did not introduce any evidence in his defense. Therefore, he claims that his sufficiency challenge should be based only on the evidence admitted by the close of the State's case in chief, and that we should not consider any evidence introduced during his codefendants' case in chief. The State agrees, and concedes that it may only rely on the evidence that it presented in its case in chief. Thus, our sufficiency analysis considers only the evidence presented during the State's case in chief. See State v. Jackson, 82 Wn. App. 594, 608, 918 P.2d 945 (1996) ("At the end of the State's case in chief, a court examines sufficiency of the evidence admitted so far. . . . Regardless of when a court is asked to examine the sufficiency of the evidence, it will do so using the best factual basis then available.").

dwelling. Blunt correctly notes that mere physical presence at a scene is not sufficient to show that an individual was an accomplice to a crime. State v. Roberts, 80 Wn. App. 342, 355, 908 P.2d 892 (1996). While the key evidence against Blunt was circumstantial, circumstantial evidence alone can be sufficient to support a conviction. See State v. Schrager, 74 Wn.2d 75, 81, 442 P.2d 1004 (1968). Here the evidence allowed the jury to infer much more than mere physical presence.

Blunt's story as to why he was at the scene in the early morning hours—that he fell asleep drunk with a woman named Teri—appeared inconsistent with other facts. Deputy Koster's colleague, Snohomish County Sheriff's Sergeant David Sorenson, first saw Blunt as he was walking out of the residence's carport.[2] But, Deputy Koster saw no blankets or pillows in the yard, even though the yard had a lot of dew on the ground. And, Blunt's clothes were not wet. There were no sleep lines on his face or body. He smelled no alcohol on Blunt's breath. No woman named Teri was found. And, Deputy Sadro observed that it was "odd" that Blunt was wearing shorts while sleeping outside all night without blankets, given that Deputy Sadro himself felt "chilled" while in uniform.

Blunt had been in the fenced backyard of the Davis house, from which many items had been taken. He exited from a gate the leads to the backyard, which was fully enclosed except for the gate. The lock on the gate to the backyard had been broken. On the patio in the back yard, items were found in a tote that, according

---

[2] The carport went from the backyard to the front. It was possible to walk from the backyard to the front of the house, through the carport, without entering the house itself.

to Deputy Sadro, would not normally be left outside and exposed to weather. A back door to the house had been pried open to gain entry.

The contents of the Jeep—which Bruce admitted he had driven to the scene—were probative. Inside the jeep, the police found pill bottles for Davis and mail addressed to Davis. The police also found a single glove in the glove box of the Jeep that matched a glove found inside of the residence. The Jeep contained additional tools that could be used to break in—bolt cutters, a pair of pliers, and a screwdriver. And, a backpack containing Blunt's driver's license was found in the Jeep.

Here, we look only at the evidence offered before the State rested. See State v. Jackson, 82 Wn. App 594, 608, 918 P.2d 975 (1996) ("At the end of the State's case in chief, a court examines sufficiency based on all of the evidence admitted at trial so far."). But, that included evidence that in the early morning hours Blunt was in the backyard of a residence that had been burgled, that Bruce and Blunt were connected, that the Jeep to which they were both connected contained stolen items, that the Jeep included bolt cutters and a glove that matched a glove found in the residence, and that Bruce received mail at Vik's house, which also contained stolen goods. The prosecutor's theory was that Blunt arrived at the scene with Bruce, and that Blunt had assisted in the break in given his proximity to the house and connection, albeit indirect, to the burglary tools.

Taking this evidence in the light most favorable to the State, it is sufficient to allow a reasonable jury to infer that Blunt was a principal or accomplice in the residential burglary.

II. Severance

Before trial and after the State rested its case, Blunt unsuccessfully moved to sever his trial from that of his codefendants. He argues that the trial court abused its discretion in denying his motions to sever. Specifically, he argues that the trial court abused its discretion in not severing under CrR 4.4(c)(2). That rule states that a trial court should grant a severance

> (i) if before trial, it is deemed necessary to protect a defendant's rights to a speedy trial, or it is deemed appropriate to promote a fair determination of the guilt or innocence of a defendant; or
>
> (ii) if during trial upon consent of the severed defendant, it is deemed necessary to achieve a fair determination of the guilt or innocence of a defendant.

Id. And, he alternatively argues that the trial court should have granted severance under CrR 4.4(d), which states:

> If . . . a defendant moves to be severed at the conclusion of the prosecution's case or of all the evidence, and there is not sufficient evidence to support the grounds upon which the moving defendant was joined or previously denied severance, the court shall grant a severance if, in view of this lack of evidence, failure to sever prejudices the moving defendant.

A trial court's denial of a motion for severance will not be reversed absent a manifest abuse of discretion. State v. Dent, 123 Wn.2d 467, 484, 869 P.2d 392 (1994).

"Separate trials are not favored in this state." Id. On appeal from denial of a motion for severance, the defendant has the burden of demonstrating that a joint trial was so manifestly prejudicial as to outweigh the concern for judicial economy. State v. Hoffman, 116 Wn.2d 51, 74, 804 P.2d 577 (1991). To meet this burden,

the defendant must show specific prejudice. State v. Jones, 93 Wn. App. 166, 171, 968 P.2d 888 (1998). We infer specific prejudice from the following:

> "(1) antagonistic defenses conflicting to the point of being irreconcilable and mutually exclusive; (2) a massive and complex quantity of evidence making it almost impossible for the jury to separate evidence as it related to each defendant when determining each defendant's innocence or guilt; (3) a co-defendant's statement inculpating the moving defendant; (4) or gross disparity in the weight of the evidence against the defendants."

Id. at 171-72 (quoting State v. Canedo-Astorga, 79 Wn. App. 518, 528, 903 P.2d 500 (1995)). Blunt argues that these four factors weighed in favor of severance.

A. Mutually Antagonistic Defenses

Blunt argues that this factor weighs in favor of severance, because his defense was irreconcilable with the other defendants. We disagree. Blunt's defense was that he had fallen asleep in the backyard after being intoxicated. Bruce's defense was that the Jeep had broken down after he had attended a nearby party. Vik's defense was that he was on his way, with Gorbunov and Vladimir Karabut, to pick up Bruce in the allegedly broken down Jeep.[3] And, relatedly, Vik testified that Bruce and Blunt had stopped by his house the night before.

While these defenses are all different stories as to what led each suspect to the scene of the alleged crime, they are not irreconcilable. Bruce could have been stuck on the side of the road sleeping. Vik could have been on his way to

---

[3] Bruce told officers that the Jeep had broken down. But, the evidence suggested that the owner of the Jeep, who was not Bruce, drove it away from an impound yard without issue. As the State notes, this leads to a reasonable inference that the Jeep was in fact not broken down.

help his friend, Bruce. Meanwhile, Blunt could have slept in the backyard of a random residence, all without the burglary taking place. And, Bruce and Blunt could have visited Vik the night before at Vik's residence. While these stories may not amount to a particularly cohesive defense narrative between all suspects, they are not mutually exclusive. Therefore, this factor does not weigh in favor of severance.

### B. Massive and Complex Quantity of Evidence

Blunt argues that the amount of evidence weighs in favor of severance. He argues that, because eight officers testified over a number of days, the jury would have had difficulty sorting evidence between defendants. For example, he notes that, while codefendants were discovered to possess stolen property, the evidence did not suggest Blunt possessed any stolen property. Distinctions such as this could have been overlooked by the jury, he claims.

But, that there was a large amount of evidence does not mean that this factor weighs in favor of severance. Rather, this factor requires that the amount of evidence makes it "almost impossible" to separate the evidence. Id. And, here, the majority of the evidence pertained to a single sequence of events, on the same morning, at the same location, given by a group of officers that all responded to the same scene. That the officers had different interactions, with different suspects, that yielded different pieces of evidence, does not mean that it was almost impossible for the jury to separate the evidence.

## C. Codefendant's Statements

Blunt argues that his codefendants' statements incriminated Blunt. Specifically, he notes that Vik's testimony that Blunt and Bruce came over to Vik's house the previous night showed that all three men knew each other, and therefore made it seem more plausible that all three men planned the crime together.

To support severance, a codefendant's statement regarding another codefendant must be "powerfully incriminating." Jones, 93 Wn. App. at 172. "Powerfully incriminating" evidence directly implicates the defendant in the crime charged. See id. (holding that evidence was not powerfully incriminating because it did not directly implicate a defendant in the crime). And, here Vik's statement that he saw Blunt the night before merely suggested that he knew Blunt. It did not contain any allegations about Blunt's involvement in the alleged burglary. It did not directly incriminate Blunt, and therefore was not powerfully incriminating. Vik's statements do not mandate severance.

## D. Gross Disparity of Evidence Against Defendants

Blunt also contends that the relative lack of evidence against him, compared to the evidence against his codefendants, supports severance. His argument primarily turns on the fact that his codefendants were found to have possessed stolen property, while Blunt was never shown to actually possess any of the stolen property.

While it is true that the police did not find Blunt directly in possession of stolen property, we cannot say that the disparity in evidence was so substantial that severance was required. For example, Blunt was the only suspect that

admitted that he was on the property of the allegedly burglarized home. His backpack was located in a vehicle where stolen items were found. By contrast, no evidence directly placed Vik or Bruce on the property. The evidence was not so disparate that severance was required.

We hold that the trial court did not abuse its discretion in denying Blunt's motions to sever trial from his codefendants.

### III. Prosecutorial Misconduct

Blunt also argues that the prosecutor committed misconduct by referring to facts not in evidence, and personally commenting on Blunt's guilt. In rebuttal, regarding Blunt's presence at the scene, the prosecutor stated:

> Well, I'm not going to sit here and say that I can prove that he went inside[ the house,] okay? I think that's clear at this point. But why else would you be in there if you're not an accomplice? Why else would you get out of the vehicle and go onto the property, if you're not an accomplice?
>
> I have my own theory. He's probably the guy that had the crowbars, opened the door. I don't know that for sure, of course. I don't have pictures, I don't have video. But you can put these things together and ask yourself, why else would he be there; okay? Why else would your things be with Michael Bruce?

The defendant bears the burden of proving that the prosecutor's alleged misconduct was both improper and prejudicial. State v. Emery, 174 Wn.2d 741, 756, 278 P.3d 653 (2012). The burden to establish prejudice requires the defendant to prove that there is a substantial likelihood that the instances of misconduct affected the jury's verdict. State v. Thorgerson, 172 Wn.2d 438, 442-43, 258 P.3d 43 (2011). The failure to object to an improper remark constitutes a waiver of error unless it is so flagrant and ill-intentioned that it causes an enduring

and resulting prejudice that could not have been neutralized by an admonition to the jury. Id. at 443.

Blunt did not object to the prosecutor's statements that he alleges were misconduct. His arguments on this issue are therefore waived unless the remarks were flagrant, ill-intentioned, and unable to be cured by a supplemental instruction.

At trial, counsel are permitted latitude to argue the facts in evidence and reasonable inferences in their closing arguments. State v. Dhaliwal, 150 Wn.2d 559, 577, 79 P.3d 432 (2003). They may not, however, make prejudicial statements that are not sustained by the record. Id. Nor are prosecutors permitted to state their personal beliefs about the defendant's guilt. Id. at 577-78.

Blunt contends that the prosecutor's statement was a statement of personal belief about Blunt's guilt. And, he contends that the statement relied on evidence not in the record. The State concedes that it is "fair to criticize" the prosecutor for describing his reasonable inference as his own theory, but argues that it does not rise to the level of flagrant, ill-intentioned, and incurable.

First, the prosecutor's "theory"—that Blunt "was probably the guy that had the crowbars, opened the door"—was a reasonable inference and relied on facts in the record. The crowbar was found outside the house. Blunt was found outside the house. His bag was found in the same car as bolt cutters. The other four suspects did not admit to being on the premises. Offering a theory to the jury that Blunt used the crowbars to break into the house was a reasonable inference. And, the prosecutor's statement explicitly noted that this was merely a theory. He noted that "I don't know that for sure, of course. I don't have pictures, I don't have video.

But you can put these things together and ask yourself, why else would he be there; okay?" This told the jury that it was no more than an inferential theory. He did not suggest that direct evidence proved this, but instead noted that direct evidence did not prove this. He therefore left adequate room for the jury to accept or reject this inference based on the indirect evidence in the record.[4] This did not reference evidence not in the record such that it was flagrant, ill-intentioned, and incurable.

Second, although the prosecutor stated "I have a theory," it was not in fact a personal opinion as to Blunt's guilt. To determine whether the prosecutor is expressing a personal opinion of the defendant's guilt, independent of the evidence, a reviewing court views the challenged comments in context. State v. McKenzie, 157 Wn.2d 44, 53-54, 134 P.3d 221 (2006). As this court has observed:

> It is not uncommon for statements to be made in final arguments which, standing alone, sound like an expression of personal opinion. However, when judged in the light of the total argument, the issues in the case, the evidence discussed during the argument, and the court's instructions, it is usually apparent that counsel is trying to convince the jury of certain ultimate facts and conclusions to be drawn from the evidence. Prejudicial error does not occur until such time as it is clear and unmistakable that counsel is not arguing an inference from the evidence, but is expressing a personal opinion.

State v. Papadopoulos, 34 Wn. App. 397, 400, 662 P.2d 59 (1983). And, here the prosecutor's statement that began with "I have my own theory" was made in the context of the evidence from which that theory drew inferences. The prosecutor was discussing the aspects of Blunt's story that seemed unlikely, such as Blunt

---

[4] Moreover, the trial court's instructions noted to the jury that "It is important . . . for you to remember that the lawyers' statements are not evidence. The evidence is the testimony and the exhibits."

falling asleep drunk in the same yard as a house that was broken into, while some acquaintances were found nearby with stolen property. His backpack and a bolt cutter were found in the same car as Bruce. The prosecutor spoke in the first person, but his remark was ultimately one about the State's theory of the case, and the inferences that the State drew from the various pieces of evidence. When looking at the context of the remark, we cannot say that he expressed a personal opinion about Blunt's guilt that was flagrant, ill-intentioned, and incurable by instruction.

Because the comments were not flagrant, ill-intentioned, and incurable, Blunt's prosecutorial misconduct argument is waived.

IV. SAG

In a SAG, Blunt argues that the trial court lacked jurisdiction, and that his counsel was ineffective and committed misconduct.[5] First, with respect to jurisdiction, Blunt argues that the case should not have proceeded because he objected to the trial court's jurisdiction. But, superior courts have original subject matter jurisdiction over all felonies, and over all cases for which jurisdiction is not vested in some other court. State v. Werner, 129 Wn.2d 485, 492, 918 P.2d 916 (1996). And, Blunt points to nothing in the record that suggests that the trial court did not have personal jurisdiction over him. Blunt fails to establish that the trial court lacked jurisdiction.

---

[5] In his SAG, Blunt also argues that the trial court should have severed trial from his codefendants, and that the evidence was insufficient to prove residential burglary. But, these arguments mirror the arguments in his brief, which we addressed above.

Second, Blunt argues that his counsel was ineffective, because he did not adequately consult Blunt about his plea, performed a poor investigation, and was not adequately prepared. And, he argues that counsel committed misconduct by telling a potential witness that he or she should seek an attorney based on what that potential witness told Blunt's counsel. This witness, Blunt claims, did not testify as a result. But, the record does not show anything with respect to counsel's level of investigation. Nor does it reflect anything regarding a potential witness that did not testify based on Blunt's attorney's advice. It is Blunt's burden on appeal to furnish us with facts sufficient to support his assignment of error. State v. Holbrook, 66 Wn.2d 278, 280, 401 P.2d 971 (1965). He has failed to carry that burden. If material facts exist that have not been previously presented and heard, and require vacation of the conviction, then Blunt's recourse is to bring a properly supported personal restraint petition under RAP 16.4.

We affirm.[6]

WE CONCUR:

_Appelwick, J._

_Trickey, A.C.J._

_Dwyer, J._

---

[6] Blunt asks that appellate costs not be imposed, because the trial court found Blunt indigent for the purposes of appeal. State does not contest Blunt's indigency in its brief. "Unless a trial court finds a defendant's condition has improved, we presume the defendant continues to be indigent." State v. Caver, 195 Wn. App. 774, 785, 381 P.3d 191 (2016), review denied, 187 Wn.2d 1013 (2017). The State is therefore not entitled to costs.